## COCA COLA BOTTLING CO. v. HANKINS.

### No. 15310.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 11, 1952.

Rehearing Denied Feb. 8, 1952.

Cantey, Hanger, Johnson, Scarborough & Gooch and Charles L. Stephens, Fort Worth, for appellant.

Jack Love, Davis, Spurlock & Schattman., Joe Spurlock, and Denning Schattman, Fort Worth, for appellee.

HALL, Chief Justice.

Appellee B. H. Hankins secured judgment in the district court of Tarrant County in the sum of $15,000 against appellant Coca Cola Bottling Company of said County for personal injuries which he alleged to have been proximately caused by negligence of such Company. The jury convicted appellant of negligently manufacturing, processing, bottling and distributing one or more glass bottles of coca cola which exploded and cut appellee's right kneecap with glass flying therefrom.

Appellant divides its eight points into two groups.

■ In the main proposition under its first four points of error, appellant asserts that appellee failed to make out a case of res ipsa loquitur because he did not introduce affirmative evidence showing that after the bottle in question had left appellant's possession it was in no way accessible to extraneous harmful forces, and his testimony failed to affirmatively show that said bottle was carefully handled by appellee or any third person who might have moved or touched it.

We overrule this contention because the testimony, though conflicting, established the fact that appellant made three deliveries a week to the store where appellee purchased the twelve bottles of coca cola, one or more of which exploded and injured him; that the pasteboard cartons containing such bottles were carefully stacked in a certain place in the store and that no one disturbed or negligently handled them from the time appellant's employee placed them in the store until the same exploded while appellee was carrying the carton from his car into his house.

We believe the holding by our Supreme Court in the case of Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445, Id. Tex.Civ.App., 182 S.W.2d 512, commits our jurisprudence to the rule of evidence known as res ipsa loquitur, as there defined. Hence, the testimony adduced here is sufficient to place the case under such rule.

Appellant seeks reversal of this case in his last four points upon several propositions. One is that the trial court erred in not granting it a new trial, in that while appellee was on the witness stand his counsel had him exhibit the one-half inch cut and his operation scar to the jury. Then counsel invited the jury to feel appellee's knee in the following language:

Mr. Spurlock: "Q. Now let me help you down there. If you will, come over here. Turn around this way. Would one of you gentlemen here like to put your hand on his knee when he bends it so you can feel it?" To which counsel for appellant made the following objection:

"Mr. Gooch: If the Court please, that is a demonstration before the jury which requires the Jury to become a witness in the case. It is highly improper examination for the Jury to feel of the body of a person. They are not qualified as doctors. A man can testify, I assume he will have medical evidence here to support his testimony, and I object to that display. It is highly improper examination or whatnot, because the jurors could not necessarily have the skill of a surgeon in order to testify or to know as to what the illness is or the consequences of the examination that he makes.

"Mr. Spurlock: If the Court please, we are offering it for this purpose. I think they can see the knee-cap jerk. Mr. Gooch might take the position later on that he did that voluntarily.

"Mr. Gooch: Let's wait until Mr. Gooch takes that position.

"Mr. Spurlock: We would like for them to feel the knee-cap and actually feel it pop and jerk with their own hands.

"Mr. Gooch: He can testify to that. I will say it is highly prejudicial and inflammatory and we move for a mistrial on account of the proffer.

"The Court: I feel that the objection is well taken. I think from the standpoint of observing that is all right, but as far as feeling, I believe that goes too far."

■ We find the above manner of interrogating a witness is highly prejudicial and in view of another trial we suggest that counsel for plaintiff refrain from inviting members of the jury to feel of his

client's flesh. Appellee's doctor testified that there did not exist a "pop" or "jerk" in appellee's knee.

Appellant's argument, on which we feel compelled to reverse this case, is upon the proposition that there is no causal connection shown to exist between the alleged injury and the actual physical deficiency of appellee's kneecap.

Appellee testified that while he was carrying the carton containing a dozen bottles of cokes down his driveway he felt the carton sway and heard an explosion. That as he started to pick up the bottles he felt blood trickling down his leg. After investigating, he found a cut on the face of his knee about one-half inch long, presumably made by a piece of glass from one of appellant's coke bottles. He momentarily did not feel the laceration.

The assistant doctor to appellee's family doctor took two stitches in the wound. From that day, August 17, 1949, until May 5, 1950, appellee lost only nine days' work. On or about May 5, 1950, he underwent an operation upon his kneecap by Dr. Rex Howard, who testified in substance that by symptoms, observation and close examination he diagnosed appellee's trouble he was having with his knee as being chondromalacia of the patella, "I call that softening of the kneecap." He made his insertion sufficient to turn the kneecap outward and that he found "* * *. the cartilage was softened in a localized area, not the whole underneath surface of the kneecap but in a small localized area. * .* * It involved the convex surface. In other words it involved the part where the most pressure would be against the thigh bone. * * *" He removed the soft cartilage with a hammer and chisel. Said doctor, at the time of trial, recommended a similar operation in view of the fact that appellee's knee is causing him considerable more trouble in immovability, pain and suffering.

Such positive testimony by the physician indisputably shows that appellee within some eight months after the alleged injury suffered from an injured or diseased knee. The doctor's testimony, however, does not connect appellee's injury complained of with the softening tissue he found in appellee's knee several months thereafter. Upon the question of causal connection, appellee's attorney asked the doctor the following direct hypothetical question: "Q. All right. Now, Doctor, in your opinion as a medical expert, assuming that on August 17, 1949 a bottle of coke exploded and a piece of the glass hit the kneecap and made a wound in the kneecap that had to be closed by two stitches and the services of a doctor obtained. Then you found the condition that you found with the history obtained. In your opinion, in all probability, could that condition result from that blow or piece of glass striking his knee in the bottle explosion?"

The doctor's statement immediately following is: "A. As concerns the medical facts of this condition, chondro-malacia of the patella occurs in young people as the result direct blow on the kneecap or an injury inside the knee joint can also do it, that is, one from within, such as twisting in a football player, but direct pressure on the knee joint that causes direct pressure on the kneecap itself can cause this condition and that can be explained from a lay standpoint purely as a matter of mechanics the same as if you take a pecan and hit it with a hammer and crush it. Well, that kneecap, the cartilage on the outside is pretty much like a cocoanut when you shell it. The shell is hard, which is the bony part of the kneecap and the covering would be about the consistency of the cocoanut, only it's a little bit harder, but it won't stand a great deal of pressure so that if you hit the kneecap a direct blow, if it happens to be in the right position in the knee joint, it can then soften that cartilage and nature can't repair that cartilage."

Said doctor had the opportunity once more upon cross examination to connect the cause of the softening tissue which he found in appellee's knee to the alleged injury occasioned by appellant's negligence, but he still infers that the injury to ap-

pellee's knee may have been caused by a blow or lick from a blunt instrument, thus: "* * * If I take a hammer and hit you in the nose right there then that cartilage would be soft and when you pressed on it your finger would indent it and that's as near as I can describe the difference between the cartilage on his kneecap in the normal area and the injured area."

. Just why this most able doctor did not testify that in all probability the condition he found in appellee's knee could have resulted from the alleged injury appellee received on or about August 17, 1949, is not reflected by the record and at this time becomes immaterial. His statement in answer to appellant's direct question, supra, only left the jury with nothing but conjecture upon this very vital question. The doctor's testimony proves his eminence in the field of a bone specialist. He was so thorough in his operation that he was able to turn the kneecap over and look into the injury and remove this soft tissue, and while doing so he no doubt made up his mind from a medical standpoint what may or may not have caused the injury. The laceration complained of may or may not have penetrated the cartilage which became soft. A laceration of cartilage in the knee may or may not cause it to soften. The most we can conscientiously determine, from the doctor's testimony, is that the condition he found in appellee's knee is more apt to have been caused by a blow rather than by arthritis due from infirmities of old age. Appellee was thirty-two years of age at the time of the alleged laceration. This general determination is not sufficient to connect the specific negligent act complained of with the probable cause of appellee's ailment. If it was in the mind of the doctor that the specific cut or laceration on the knee by a piece of glass, as testified to by appellee, could have caused the softening of the tissue as he found in appellee's knee, he would only have had to answer "yes" to the hypothetical question, supra, addressed to him by appellee's attorney upon the subject. Certainly the answers to these questions are left entirely in the realm of the minds of medical experts and should not be left for conjecture by laymen.

Judgment of trial court is reversed and remanded for new trial.