**C. E. DUKE'S WRECKER SERVICE, INC., et al., Appellants,**

v.

**Barbara OAKLEY et vir., Appellees.**

No. 16486.

Court of Civil Appeals of Texas, First District.

July 17, 1975.

Rehearing Denied Aug. 14, 1975.

---

230

Alvin Laser, John P. Venzke, Houston (Fulbright & Jaworski, Houston, of counsel), for appellants.

Kronzer, Abraham & Watkins, Robert E. Ballard, Houston, for appellees.

COLEMAN, Chief Justice.

This is an appeal from a judgment awarded the plaintiffs in a suit for the personal injuries suffered in an automobile collision. The judgment was entered on the verdict of a jury.

Appellants complain of the action of the trial court in admitting certain testimony and in overruling a motion for mistrial based on claimed injection of insurance into the case. They also claim that the evidence is insufficient to support certain items. of damage found by the jury.

The first point of error complains of the action of the trial court in overruling the defendants' objection to the following question put to the plaintiff, Mrs. Oakley, by her counsel:

"O. K. Mrs. Oakley, I want to ask you: At this time, since the time of the collision up through December 10, 1971, and even on up until the day this trial started, have you been willing to be examined by anyone that Mr. Young (counsel for defendants) might choose in the form of a doctor to examine you to determine the nature of your injury?"

The objection was overruled and the question was answered "Yes." Subsequently the plaintiffs introduced into evidence a written interrogatory and the answer thereto addressed to defendants reading:

". . . Do you desire to have our client examined by a doctor of your choice? . . ."

The answer, "Not at this time," was admitted over the objection of the counsel for the defendants. In both instances counsel for the defendants objected on the ground that permitting the question and answer would constitute a violation of Rule 167a(c) of the Texas Rules of Civil Procedure.

The rule referred to above reads:

"If no examination is sought either by agreement or under the provisions of this rule, the party whose mental or physical condition is in controversy shall not comment to the court or jury on his willingness to submit to an examination, on the right of any other party to request an examination or move for an order, or on the failure of such other party to do so."

In paragraphs (a) and (b) of Rule 167a, supra, the trial court is authorized to require a party to submit to a physical or mental examination by a physician on motion for good cause shown, and, if requested by the party against whom the order is made, the party causing the examination to be made is required to deliver a copy of the written report of the examining physician to such party. After the delivery of such report the party causing the examination shall be entitled to demand a like report of any examination previously or thereafter made of the same condition. These provisions requiring exchange of medical reports are applicable also to examinations made by agreement of the parties. It is clear that under these sections of Rule 167a it was intended that the procedure for securing a medical examination of a party must be initiated by one other than the party to be examined.

In a commentary, Sales, Discovery under the Texas Rules of Civil Procedure, 37 Tex. Bar Journal 39, 43–44 (1974), the commentator states that the provisions of Rule 167a are new to Texas practice and are patterned, in substantial measure, on the Federal Rules. He states that absent other compelling considerations, the moving party is entitled to an examination by a physician of his own choosing, although this is not an absolute right and falls within the ambit of judicial discretion. Mr. Sales comments further:

". . . This forecloses the common practice of forcing the defendant to request a medical examination in order to forestall comment to the jury that the plaintiff has always been ready and willing to submit to a medical examination if

there was any dispute about his physical condition."

■ It appears that the primary purpose of this rule was to provide a procedure by which a party whose physical condition is in dispute and is a material issue in a case can be required to submit to a physical examination by another party to the suit.

■ Paragraph (c) of Rule 167a, supra, must be construed in a like manner. We do not think the intention of the Supreme Court in promulgating this rule was to allow a party whose physical or mental condition is in question to require another party to the suit to have him examined by a physician on the penalty of opening his failure to do so to comment before the jury by merely offering to enter into an agreement to submit to a physical examination.

We are in accord with the commentary found in 1 W. Jordan, Modern Texas Discovery, Section 813, at 536–37 (1974), reading:

"Subdivision (c) provides that the party whose physical or mental condition is in controversy may not mention at the trial the failure of his adversary to move for an examination under Rule 167a, his right to so move, or his (the injured party's) willingness to submit to an examination. Apparently the philosophy motivating this provision is that the opportunity for an examination, offered by Rule 167a, is a privilege that may or may not be exercised, and that no penalty should attach to a party's failure, for whatever reason, to take advantage of the opportunity."

■ The failure of the trial court to sustain the objections made to the testimony of Mrs. Oakley and to the admission on the part of the defendants was error. We must, therefore, consider whether or not such error requires a reversal of this case. Appellants contend that the provision of Rule 434, Texas Rules of Civil Procedure, is not applicable in this instance. Rule 434 requires this court to determine whether or not an error of the trial court is one which

is reasonably calculated to and probably did cause the rendition of an improper judgment before ordering a reversal of a cause. Appellants contend that this is a mandatory rule and has the same force and effect of a statute. They argue that the matter is controlled by the recent opinion of the Supreme Court of Texas in *Exxon Corporation v. Sue Brecheen,* opinion delivered July 7, 1975, Tex., 526 S.W.2d 519, wherein the Court stated:

". . . The Legislature has decreed in clear and explicit terms that evidence of the actual ceremonial remarriage of a surviving spouse is admissible in the statutorily authorized wrongful death action. The legislative determination forecloses judicial inquiry into the effect upon the fact finder of evidence that the surviving spouse has ceremonially remarried."

■ Thus it appears that the Supreme Court has held that Rule 434 is inapplicable in a situation where the legislature has enacted a mandatory rule of procedure. If there is a failure to comply with a mandatory procedural rule enacted by the legislature, the error requires reversal. Appellants assert that the Texas Rules of Civil Procedure have the same force and effect as statutes. See, *Missouri-Pacific Railroad Co. v. Cross,* 501 S.W.2d 868 (Tex.1973); *Freeman v. Freeman,* 160 Tex. 148, 327 S.W.2d 428 (Tex.1959). Appellants, therefore, conclude that the harmless error rule must also be inapplicable where there has been a violation of a mandatory rule of civil procedure as in this case.

■ It has long been established that where a rule of procedure established pursuant to the power vested in the Supreme Court conflicts with a legislative enactment, the rule must yield. *Few v. Charter Oak Fire Insurance Co.,* 463 S.W.2d 424 (Tex.1971). Rule 167a stands on no higher plane than Rule 434. Rule 233, Texas Rules of Civil Procedure, provides that each party to a civil suit tried in district court shall be entitled to six peremptory challenges. However, the Supreme Court has held that

the harmless error rule undoubtedly applies where a party is denied the number of peremptory challenges to which he is entitled. *Tamburello v. Welch,* 392 S.W.2d 114, 117 (Tex.1965). In *Tamburello* the Supreme Court reaffirmed the rule announced in *Texas Employers Ins. Association v. McCaslin,* 159 Tex. 273, 317 S.W.2d 916, that an action or occurrence may be so highly prejudicial to the fairness of a trial that the burden of going forward with proof is met, prima facie at least, by simply showing the improper act and nothing more. The Court also stated that the burden of the complaining party is met by showing that the trial which resulted in a judgment against him was materially unfair. See also, *Bostwick v. Bucklin,* 144 Tex. 375, 190 S.W.2d 818 (1945). Long prior to the adoption of Rule 434 the Supreme Court of Texas said:

> "But the rules of procedure in the courts should be so framed as to secure substantial justice, and any oversight of the court or of counsel, which, within certain limitations, is not calculated to operate to the prejudice of the parties, and has not so operated, should be disregarded." *Silliman v. Gano,* 90 Tex. 637, 39 S.W. 559, 561, 40 S.W. 391.

This rule was quoted with approval in *Wright v. Traders & General Ins. Co.,* 132 Tex. 172, 123 S.W.2d 314 (1939). A case should not be reversed merely as a penalty for the violation of a procedural rule even though the violation be flagrant and unprovoked. *Loughry v. Hodges,* 215 S.W.2d 669, 675 (Tex.Civ.App.—Ft. Worth 1948, writ ref'd n. r. e.). The purpose of the Act investing full rule making power in the Supreme Court of Texas was to enable the Supreme Court to promulgate rules that would avoid unnecessary delay and great and unnecessary expense to litigants and to the State, in the trial of cases and unnecessary reversals and new trials upon merely technical procedural grounds with consequent further delay and expense. *Pan American Petroleum Corp. v. Texas Pacific Coal & Oil Co.,* 340 S.W.2d 548 (Tex.Civ. App.—El Paso, 1960, writ ref'd n. r. e.).

We conclude, therefore, that Rule 434 is applicable in a case where a trial court has failed to comply with a procedural rule adopted by the Supreme Court of Texas, even though such rule is couched in mandatory language.

In this case the only medical testimony was that of a chiropractor, who was the brother of the plaintiff, Charles Oakley. The defendants elected not to seek a physical examination of the plaintiff, Barbara Oakley, and presented no witness to testify concerning her physical condition. Prior to trial the plaintiffs communicated to the defendants their willingness to submit to a physical examination. The defendants presented a motion in limine asking the trial judge to rule that testimony not be admitted to the effect that Barbara Oakley had agreed to submit to a physical examination. The plaintiffs' assessment of the importance of this testimony was illustrated by this quotation from their brief:

> "Had the trial court not admitted evidence of Plaintiff's willingness to be examined and evidence of the tender of an examination the Plaintiff would have been placed in an unfair and unjust position with the triers of the facts. For example, the Plaintiff was faced with the proposition of going to trial upon the testimony of the treating doctor, who is a member of her family, and risking the attendant insinuations and innuendoes or she could have changed doctors. Had this occurred, undoubtedly able counsel for Defendants would have been in a position to comment about 'changing doctors' or 'why change doctors if her brother-in-law had found any injury.' While these might have been permissible inferences, they would have undoubtedly had a tremendous impact on the Jury, adverse to the Plaintiff."

The testimony was introduced for the purpose of forestalling an anticipated attack on the credibility of the treating doctor and of adding weight to his testimony.

Undoubtedly the plaintiffs desired to leave the impression with the jury that had defendants felt that the result of a physical examination of Mrs. Oakley by a physician of the defendants' choice would have been helpful to them in the trial of the case they would have secured such an examination. This was the argument made to the jury by plaintiffs' attorney. He said:

". . . Dr. Oakley is her brother-in-law and you have heard him testify and you have heard him saying it's going to get worse. And, ladies and gentlemen, I submit to you, they don't dispute that one ounce because if they did, don't you know they would have got their own doctor, any doctor in this county or Montgomery County, Liberty County or anywhere they wanted to go to examine her if they disputed it. And we would have seen it, but they know they can't dispute it because it is right . . . If I take something of yours and I dispute the value, surely I should bring someone to say what it's worth. And he hasn't done it. And he never will do it because he knows he is wrong and he wants you to help him and he hasn't shown you a good reason why he should . . . ."

This argument obviously was based on testimony that Mrs. Oakley was willing to be examined by a doctor chosen by the defendants. The argument in question is a clear violation of Rule 167a(c), Texas Rules of Civil Procedure, as a comment on the failure of the opposite party to request an examinaion or move for an order requiring the plaintiff to submit to such an examination. The argument was not objected to and no point complaining of it is presented here. It is cited for the purpose of demonstrating the harm resulting to the defendants from the order of the trial court admitting the testimony to which objection was properly made, and to demonstrate the unfairness of the trial.

The question for determination is whether the admission of such testimony in violation of the rule rendered the trial materially unfair. We conclude that it did.

The appellants were entitled to prepare their case for trial on the assumption that the trial court would not permit introduction of such evidence. They were not required to anticipate that the trial court would fail to follow a mandatory rule of procedure. Had they anticipated such a course of action the manner in which they prepared for trial might well have been different.

At the time of the collision Mrs. Barbara Oakley was driving a 1968 model Plymouth 2-door sedan. She was struck from the rear by a 1962 Mack Diesel Wrecker which weighed 16,590 pounds empty. The investigating officer found the vehicles 130 feet and 125 feet, respectively, from the point of impact. The trunk lid on the Plymouth was badly bent and knocked loose. After the collision Barbara Oakley could not stand up very well because her legs were shaking. Her neck began to tingle while she was going home, and it had started hurting before she got home. She called Dr. Oakley and after talking with him lay down and placed a small pillow under her neck. She was hurting pretty badly by that time. The next day Dr. Oakley applied heat and massage and adjustment to her neck. She went to see him every day for two or three weeks after the wreck and has continued to see him regularly since. For the first two or three weeks after the collision her neck was extremely sore and she had bad headaches. After three weeks her condition improved but she was still limited in what she could do. She was not employed outside of her home at that time. At the time of the trial she testified that if she missed any adjustments her neck would start getting relatively stiff. She develops headaches and gets very nervous and grouchy with her children. Pain interfered with her ability to do her normal chores. At the time of the trial Mrs. Oakley was 28 years old. The collision occurred November 27, 1971. During the Christmas season subsequent to the collision she had difficulty doing her shopping. She was limited in her actions. She had to be careful in what she did shortly

after the collision and had to be cautious in driving. The injuries affected her life at home.

Dr. Oakley testified that he had treated Mrs. Oakley approximately ninety times. X-rays revealed a thinning of one disc in her neck. The damaged disc is permanent. The accident caused the disc to thin. X-rays show slippage of the joints in the neck. There is abnormal movement above the thinned disc. Films taken the week of the trial reveal additional bony overgrowth. The overgrowths of bone will cause inflammation of the joint with resulting pains. This condition would be aggravated by activities putting Mrs. Oakley in a strain or causing her fatigue. The type of work which Mrs. Oakley does would be calculated to fatigue her and make the joint worse. Plaintiff's neck has reached maximum recovery. It is not as good as before the accident. If Mrs. Oakley continues to work long hours she will need increased treatment. Her physical impairment resulting from the collision has affected her capacity to work. Her tolerance for work is less now than before the injury.

Mr. Oakley testified that the injuries have definitely affected his wife. She gets bad headaches and is not the same around people as she used to be. It is hard for her to be friendly. Even when she watches television she can't get comfortable with her neck if it stays it one position very long. When she plays with her children she moves her neck and head around which causes additional headaches.

Mrs. Oakley testified that she was able to do her household duties although with difficulty because of pain. Mrs. Oakley did not testify as to any specific task which she was unable to perform. She did not testify that she requires assistance in doing her household chores. At the time of the accident Mrs. Oakley had not worked outside the home for several years. About one year following the accident she and her husband began the operation of a hardware store. At the time of the trial she testified that she worked from about 8 o'clock or 8:30 until 6 o'clock six or seven days a week. She testified that during the six months preceding the trial the condition of her neck had remained on an even keel. There is no testimony that Mrs. Oakley was required to take medication for her pain. Dr. Oakley testified that she was not having pain to the extent that he felt medication was necessary. There is no testimony concerning the wage which Mrs. Oakley earned in her employment prior to the accident; no testimony as to the value of her services to the business which she and her husband operate; no testimony as to the wages of a person similarly engaged in similar occupations or any other type of work which Mrs. Oakley might reasonably be found qualified to perform.

The jury found that as a result of the collision in question Barbara Oakley and her husband, Charles Oakley, would be reasonably compensated for the physical pain and mental anguish which Mrs. Oakley has suffered in the past by the sum of $3,000.00; for the physical pain and mental anguish which she will suffer in the future by the sum of $6,000.00; for the loss of capacity to work in the past by the sum of -0- dollars; for the loss of capacity to perform services in the past by the sum of $1500.00; for the loss of her capacity to work which in reasonable probability will be sustained in the future by the sum of $10,000.00; and for the loss of her capacity to perform services which, in reasonable probability, will be sustained in the future by the sum of $4,500.00. Appellants contend that the jury's answers to that portion of the issue relating to loss of capacity to perform services in the past, loss of capacity to work which will be sustained in the future, and loss of capacity to perform services which will be sustained in the future are not supported by the evidence. Points relating to the legal insufficiency of the evidence and to the factual insufficiency of the evidence to support these answers are properly preserved.

■ A woman's right to recover compensation for her decreased capacity to care

for and administer to the needs of herself and her family "is not limited nor necessarily measured by the standard of value of the pecuniary return of wage or profit; but such value, not being capable of ascertainment under the ordinary rule, is to be assessed by a jury in the sound discretion of its members and in the light of their experience in their everyday affairs." *Dallas Railway & Terminal Co. v. Sutherland*, 27 S.W.2d 830 (Tex.Civ.App.—El Paso, 1930, writ dism'd). This right is not limited by an existing necessity for such labor, nor necessarily measured by the amount thereof customarily performed at or immediately prior to her injuries. *Texas & Pacific Railway Co. v. Perkins*, 284 S.W. 683 (Tex.Civ.App.—Waco, 1926, writ dism'd); *City of Ft. Worth v. Weisler*, 212 S.W. 280 (Tex.Civ.App.—Ft. Worth, 1919, no writ hist.).

■ There is sufficient evidence in the record to support the answer made by the jury to Subdivisions d. and f. of Special Issue 16 concerning the loss of capacity to perform services in the past and the loss of capacity to perform services which in all reasonable probability will be sustained in the future.

Paragraph e. of Special Issue 16 inquires of the "loss of her capacity to work" to be sustained in the future. Appellants have not objected to the form in which this element of damage was submitted, nor have they objected that it duplicates either in whole or in part Subdivision f. of Special Issue No. 16 inquiring as to capacity to perform services. The record reflects that the defendants objected to the submission of Subdivision e. of Special Issue No. 16 because it did not include the question of earning capacity but merely inquired as to the loss of her capacity to work in the future. It appears that the issue was worded deliberately to inquire as to the loss of capacity to work for the reason that there is no evidence as to wages or earnings on the part of Mrs. Oakley. While in his final argument one of the attorneys for the plaintiffs referred to the fact that the law allows a plaintiff to recover for loss of

earning capacity, the point was not emphasized. The jury did not follow the attorney's recommendations as to the dollar amounts which should be allowed for the various items of damage. In some instances they allowed more than was asked for, in others they allowed less, and in one instance nothing.

The Supreme Court of Texas carefully considered the question of the quantum and the type of evidence necessary to support a jury's finding on the question of lost earning capacity in *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710 (1943). There the court said:

"  .  .  In a personal injury suit the amount which the plaintiff might have earned in the future is always uncertain, and must be left largely to the sound judgment and discretion of the jury. However, the verdict must be based on something more than mere conjecture. It must be an intelligent judgment, based upon such facts as are available. Even where the injury is of such a serious and permanent nature that loss of earning capacity is the necessary result, proof is required to show the extent and amount of the damages  .  .  .  No general rule can be laid down, except that each case must be judged upon its peculiar facts, and the damages proved with that degree of certainty of which the case is susceptible  .  .  ."

A good discussion of this question is also found in *Southwestern Freight Lines v. McConnell*, 254 S.W.2d 422 (Tex.Civ.App.—El Paso, 1952, error ref'd).

■ In this instance, however, the jury was not confined to loss of earning capacity. The issue is loss of the ability to work. There is evidence of the nature and extent of the injury suffered by Mrs. Oakley and its effect on her ability to work. There is some evidence that she cannot do as much work as she could have before the injury and there is some evidence that her condition may worsen in the future. The answer made to this inquiry is supported by suffi-

cient evidence. We suggest, however, that on retrial of this cause the issue be framed to inquire as to the loss of earning capacity.

Appellants present a point of error asserting that the trial court improperly overruled defendants' motion for new trial because plaintiffs "improperly injected insurance into the case" during jury argument. During his argument an attorney for plaintiffs stated:

> ". . . I am concerned that someone on the jury will let bias or prejudice creep into his mind and someone will say, 'well, look here, Mr. Bouie can't stand all of this.' And if you do, you make the biggest error you have made in a long time, if you consider anything outside the evidence, you see, because if you consider whether a person can or cannot pay, you are going outside the record and you are going outside the evidence."

Further in his argument he stated:

> "Now, the judge considers this important . . . No. 9 is of particular importance and re-emphasizes what I say in deciding this case, emphasizing deciding on the evidence and not speculating about . . . Well, what it maybe . . . I wonder. Don't worry about the judgment, who will pay it, how it will be paid or whether it will ever be paid. That is Judge Cartwright's job. All I say is don't . . . don't be cheap with a human being. Don't get to speculating about can it be paid. Don't worry about it."

After the arguments were concluded and the jury retired, the defendants made a motion for mistrial based upon the allegedly improper argument. Defendants further assert that had they objected during argument itself, the material would unnecessarily have been emphasized.

The rule in Texas is clear that the injection of insurance into a case when the insurance company is not a named party is error. *Dennis v. Hulse*, 362 S.W.2d 308 (Tex.1962); *Ford v. Carpenter*, 147 Tex. 447, 216 S.W.2d 558 (Tex.1949). Cases may be cited that the plaintiff need not specifi-

cally mention insurance but that error occurs if the plaintiff's argument clearly gives the inference of the presence of insurance. *Ulmer v. Mackey*, 242 S.W.2d 679 (Tex.Civ.App.—Ft. Worth 1951, writ ref'd n. r. e.); *Griffith v. Casteel*, 313 S.W.2d 149 (Tex.Civ.App.—Houston, 1958, writ ref'd n. r. e.); *Hurley v. McMillan*, 268 S.W.2d 229 (Tex.Civ.App.—Galveston, 1954, writ ref'd n. r. e.).

In *Dennis v. Hulse, supra*, the Supreme Court said:

> "Respondent argues that the mention of insurance always requires a reversal of the case, because the error is regarded as incurable. We do not agree. When the courts say that an error is incurable, they usually mean that instructions or other curative measures that might be attempted by either the court or counsel will not eliminate the danger of prejudice. Under our practice an appellate court is not authorized to reverse merely because the record discloses some error that is reasonably calculated to cause a miscarriage of justice. The party appealing must also show that it probably did cause the rendition of an improper judgment in the case . . . ."

Appellees explain and justify the contested portion of their jury argument as merely being a comment or explanation to the jury of the preliminary instructions given by the court to the jury prior to the presentation of the evidence, which are not preserved in the record. By Rule 226a II, Texas Rules of Civil Procedure, the Supreme Court has directed trial courts to give certain instructions in writing to the jury. No. 9 of these instructions reads:

> "Do not consider, discuss, nor speculate whether or not any party is or is not protected in whole or in part by insurance of any kind."

In *Springer v. Baggs*, 500 S.W.2d 541 (Tex.Civ.App.—Texarkana, 1973, writ ref'd n. r. e.), the court considered a comment made by counsel on instruction no. 9 and held:

"We do not believe this argument, considered as a whole, can fairly be said to have necessarily been calculated to cause the jury to consider that the defendant was protected by insurance, or that it reasonably had that effect. To hold otherwise on the facts here would be to hold, in effect, that little more than the mere reading of one of the court's admonitory instructions would be improper."

Appellees' counsel argued to the jury that they should not let bias or prejudice affect their verdict and that they should not go outside the record. He referred to instruction no. 9 but did not quote it. We are not convinced from a consideration of the argument as a whole that the plaintiffs conveyed to the jury the information that the defendants probably were protected by insurance. The gist of the argument was that the jury should not be influenced by speculation as to whether the defendants were poor or rich or protected by insurance or not. While this argument approaches the outer limits of permissible argument, we believe that it did not overstep such limits.

Reversed and remanded.