**PARKWAY HOSPITAL, INC. and Epic Healthcare Group, Inc., Appellants,**

**v.**

**Lisa LEE, Individually, and as Next Friend of Alexander Lee, Appellees.**

No. 14–96–00277–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 22, 1997.

Rehearing Overruled June 19, 1997.

Kevin J. Keith, Dallas, Thomas P. Sartwelle, Houston, for appellants.

Jim M. Perdue, Mark D. Clore, Denice Smith, R. Tate Young, Houston, for appellees.

Before LEE, AMIDEI and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

Lisa Lee was in active labor when a nurse at Parkway Hospital, Inc. ("Parkway") gave her an injection of Pitocin, a drug used to accelerate labor. Shortly thereafter Lisa's uterus ruptured and her son, Alexander, was born with severe neurological injuries. Immediately after the delivery, Lisa underwent an emergency hysterectomy. Lisa filed suit against her obstetrician, Dr. Chin Lee (no relation), and the hospital, alleging that their negligence caused the injuries she and her son sustained. At trial, the cause of the plaintiffs' injuries was hotly contested. The Lees claimed the negligent administration of Pitocin was the proximate cause of their injuries. The hospital claimed the tetanic contractions that ruptured Lisa's uterus were not precipitated by the administration of Pitocin, and Alexander's cerebral palsy was the result of congenital abnormalities and genetic disorders. It was also disputed whether the Pitocin was administered with or without a doctor's order.

The jury found no negligence on the part of Dr. Lee, and determined that the hospital's negligence proximately caused the plaintiffs' injuries. The jury awarded over $16 million in damages, and the trial court entered judgment on the verdict.[1] In eight points of error, Parkway contends the trial court erred in (1) making various evidentiary rulings, (2) allowing the Lees to amend their

---

1. The trial court entered judgment against Parkway and Epic Healthcare Group, Inc. The parties stipulated that Epic would pay any final, nonappealable judgment against Parkway. Epic's liability is not an issue in this appeal.

petition post-verdict, (3) allowing an award for "damage to the family relationship," and (4) awarding excessive guardian ad litem fees. Finding no abuse of discretion, we affirm the judgment of the trial court.

## Evidentiary Rulings—Standard of Review

■ The hospital's first five points of error complain of evidentiary rulings made by the trial court. The admission and exclusion of evidence, including demonstrative evidence, is committed to the trial court's sound discretion. *Hur v. City of Mesquite*, 893 S.W.2d 227, 231 (Tex.App.—Amarillo 1995, writ denied); *see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–754 (Tex.1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The supreme court has defined "abuse of discretion" as "a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

■ To obtain reversal of a judgment based upon error in the admission or exclusion of evidence, the appellant must show (1) the trial court did in fact commit error, and (2) the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Bridges v. City of Richardson*, 163 Tex. 292, 354 S.W.2d 366, 368 (1962); Tex.R. App. P. 81(b). Appellant need not prove that but for the evidentiary error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992); *King v. Skelly*, 452 S.W.2d 691, 696 (Tex.1970). A judgment will not be reversed for erroneous rulings on admissibility of evidence where the evidence in question is cumulative and not controlling on a material issue dispositive of the case. *Whitener v. Traders and General Ins. Co.*, 155 Tex. 461, 289 S.W.2d 233, 236 (1956); *see also Turner v. Monsanto Co.*, 717 S.W.2d 378, 381 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *See GT & MC, Inc. v. Texas City Ref., Inc.*, 822 S.W.2d 252, 257 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Atlantic Mut. Ins. Co. v. Middleman*, 661 S.W.2d 182, 185 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). We must review the entire record to determine whether the case turns on the erroneously admitted evidence. *See Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989); *Gee*, 765 S.W.2d at 396.

## Points of Error One and Two

In its first two points of error, Parkway contends the trial court erred in allowing the Lees' medical expert, Dr. Robert Yetman, to conduct an evaluation of Alexander before the jury. It is helpful in addressing these points to understand the sequence of events preceding introduction of the contested evidence. During voir dire and opening statement, the defense emphasized that there was no current neurological information about the child. Counsel stated that no such medical information would be presented "unless somebody goes out and does it before this trial ends." Counsel also queried whether Alexander's condition was "as bad as it sounds" and whether he "might, in fact, be improving?" To counter these remarks, the Lees called Dr. Yetman, a pediatrician with the University of Texas at Hermann Hospital, who attended Alexander shortly after birth. Dr. Yetman had been timely designated as Alexander's treating physician to testify "on issues of causation regarding Alexander Lee's injuries, damages associated with his condition, including necessary medical, educational, nursing therapy, expenses and intervention."

Because Alexander's neurological deficiencies are not readily visible, Dr. Yetman was asked to conduct a brief evaluation of the child to demonstrate his injuries to the jury. Parkway objected to any new opinions from Dr. Yetman, and claimed that such an evaluation was not within the plaintiffs' designation. Parkway further complained that the witness violated Rule 167a by indicating his willingness to conduct such an examination. The

trial court overruled Parkway's objections, but ordered Dr. Yetman to conduct an in-camera preview of the demonstration so that the parties could see "the full breadth of what's being offered" and make their objections to any new opinions in advance. The preliminary in-camera evaluation was video-taped, and is hereafter referred to as the "preview tape."

The preview tape is approximately eleven minutes in length and shows Dr. Yetman directing Alexander to walk forward, walk backward, draw on a piece of paper, put blocks in a cup, stack blocks on top of each other, place a raisin in a small bottle, give a doll a bottle, and talk. During this process, Dr. Yetman asked Lisa questions about Alexander's verbal and physical capabilities. When the preview was completed, the Lees limited their offer of Dr. Yetman's evaluation for the purpose of "exhibit[ing] the child's injuries, that is the nature of his motor dysfunction, his problems walking . . . his inability to use his hands, fingers . . . his problem with trunk control or incoordination, that is the inability for him to stand up and control his movements. . . ." The court accepted the limited offer, stating that "the sole purpose [of the evaluation] is to demonstrate the child's function," and instructed Lisa not to volunteer information during the demonstration to be conducted before the jury. The defense was told that if Dr. Yetman offered new opinions or testified beyond the scope of his designation during the in-court evaluation, objections could be lodged at that time. The trial then resumed, and Dr. Yetman proceeded with the in-court evaluation.

Dr. Yetman explained to the jury that his demonstration would give "a brief overview of how [Alexander] currently functions." Due to the child's young age, the evaluation took place in the privacy of the court's chambers and was simultaneously viewed by the jury through closed-circuit television. The in-court demonstration was approximately three and a half minutes shorter than the preview and showed Alexander performing the same activities, but without Lisa's input. During the in-court demonstration and Dr. Yetman's subsequent testimony, there were no objections that Dr. Yetman was offering

new opinions or testifying beyond the scope of his designation. In fact, Dr. Yetman stated that he formed his opinions about Alexander's condition after reviewing a "day-in-the-life video" made approximately one year earlier, which showed Alexander performing most of the same functions he demonstrated during the in-court evaluation. The "day-in-the-life video" was admitted into evidence without objection.

In its first point of error, the hospital claims the Lees violated Rule 167a by expressing a willingness to submit Alexander to an evaluation. Tex.R. Civ. P. 167a(c). Rule 167a provides that if the mental or physical condition of a party is in controversy, the trial court may, on motion and with notice to the person to be examined, "order the party to submit to a physical or mental examination by a physician or psychologist" at a specific time and place. *Id.* The order shall also specify the "manner, conditions, and scope of the examination and the person or persons by whom it is to be made." *Id.* If no examination is sought or ordered by the trial court, the party whose condition is in controversy "shall not comment to the court or jury on his willingness to submit to an examination, on the right of any other party to request an examination or move for an order, or on the failure of such other party to do so." *Id.*

Parkway claims this rule was violated in the following exchange between the Lees' counsel and Dr. Yetman:

Q. (Mr. Clore) Dr. Yetman, if there are some suggestions in this case that, well, we don't have a current evaluation of the child, that without a current evaluation you can't really get enough information, is that something that we could rectify here today, I mean to have some better understanding or a better picture of a current evaluation of the child?

A. (Dr. Yetman) You could do another evaluation on him would be the easiest thing to do.

Q. So everybody will know, have you and I talked about that?

A. Yes.

Q. We talked about that on Saturday?

A. Yes.

Q. Dr. Yetman, are you willing to do like a limited evaluation of the child today if there's been some suggestion that we don't have a current evaluation?

Parkway contends the trial court erred in denying its motion for mistrial because the Lees violated the Rule 167a(c) mandatory prohibition of commenting to the jury on their willingness to submit Alexander to an examination. We disagree.

■ Rule 167a provides a procedure by which another party to the suit, typically a defendant, may require a party whose physical condition is in dispute to submit to a physical examination. The primary purpose of subparagraph (c) is to ensure that the defendant is not penalized for failing to seek a physical examination as allowed by the rule:

Subdivision (c) provides that the party whose physical or mental condition is in controversy may not mention at the trial the failure of his adversary to move for an examination under Rule 167a, his right to so move, or his (the injured party's) willingness to submit to an examination. Apparently the philosophy motivating this provision is that the opportunity for an examination, offered by Rule 167a, is a privilege that may or may not be exercised, and that no penalty should attach to a party's failure, for whatever reason, to take advantage of the opportunity.

*C.E. Duke's Wrecker Service, Inc. v. Oakley,* 526 S.W.2d 228, 232 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (quoting 1 W. Jordan, Modern Texas Discovery, Section 813, at 536–37 (1974)). The rule was not designed to prevent a party whose physical or mental condition is in dispute from demonstrating their injuries to the jury, but to prevent an adverse party from being forced to seek a medical evaluation or risk opening his failure to do so to comment before the jury. *Id.*

■ The colloquy between the Lees' counsel and Dr. Yetman violated neither the letter nor the spirit of Rule 167a. Dr. Yetman was simply asked whether he would be willing to do a limited evaluation of the child before the jury, and counsel emphasized that

he was offering Dr. Yetman's interaction with Alexander only to "exhibit the child's injuries." This exchange in no way reflected upon the hospital's failure to request a medical evaluation, as contemplated by Rule 167a. The hospital itself placed the child's current medical status in issue during voir dire and opening statement. By seeking to exclude Dr. Yetman's testimony under Rule 167a, the hospital attempts to use the rule as a sword rather than a shield, as contemplated by the rule, by challenging the child's current medical condition, then objecting to evidence of his current medical condition on the ground that the hospital had not sought a medical evaluation under the rule. We decline to so apply Rule 167a(c). Point of error one is overruled.

In its second point of error, Parkway contends the trial court erred in overruling its objections to the in-court evaluation and Dr. Yetman's opinion testimony about the child's medical condition and prognosis. Parkway claims the doctor's testimony was based on the in-court demonstration, and that it was unduly prejudiced because it had no prior notice. Resolution of this point turns upon (1) whether the evaluation went beyond a mere demonstration of Alexander's injuries to the jury, and (2) whether Dr. Yetman offered new opinions based upon the evaluation that surprised or unduly prejudiced the hospital.

■ The admission of demonstrative evidence rests within the sound discretion of the trial court, and the court may permit a demonstration of the plaintiff's injuries to the jury "so long as the demonstration is not conducted in such a manner as to pass beyond the limits of introducing proof of the extent and nature of the injury and become merely a method of inflaming the minds of the jury." *Gray v. L–M Chevrolet Co.,* 368 S.W.2d 861, 864 (Tex.Civ.App.—El Paso 1963, writ ref'd n.r.e.) (citing *Coca Cola Bottling Co. v. Hankins,* 245 S.W.2d 740 (Tex. Civ.App.—Fort Worth 1952), *rev'd on other gr.,* 151 Tex. 303, 249 S.W.2d 1008 (1952); *Travelers Ins. Co. v. Epps,* 191 S.W.2d 100 (Tex.Civ.App.—Fort Worth 1945, writ ref'd n.r.e.)). Parkway does not challenge the

general proposition that a plaintiff may exhibit his injuries to a jury, but claims the evaluation in the present case went beyond a simple demonstration and became an improper pediatric "examination." However, Parkway fails to articulate in what manner the evaluation went beyond a simple demonstration of Alexander's injuries. The jury observed Alexander performing activities that demonstrated the nature of his neurological deficits by showing the extent of his motor problems, his ability to perform simple tasks and his communication skills. The examination was limited by the trial court and was, as demonstrated by the video and confirmed by Dr. Yetman, "purely objective." Indeed, it is difficult to imagine any other way in which Alexander could have exhibited his cognitive and physical abilities to the jury. We agree with the Alabama Supreme Court that in evaluating neurological injuries in a minor child

> ... it would be difficult to exhibit cognition without a demonstration of vocal expression, physical response, or a combination of both, and thus it would not be, as a matter of law, erroneous to have such a demonstration guided by a witness skilled in ascertaining such relevant responses and explaining their meaning. The accuracy of such a demonstration, of course, is to be tested by the requirements of relevancy, and such a demonstration is to be disallowed when its probative worth is exceeded by its capacity for prejudice.

*Ensor v. Wilson,* 519 So.2d 1244, 1257–58 (Ala.1987). *See Heidbreder v. Northampton Township Trustees,* 64 Ohio App.2d 95, 411 N.E.2d 825, 829 (1979) (finding no error in allowing child to demonstrate extent of motor paralysis and ability to communicate and do simple tasks to jury); *Seattle–First Nat'l Bank v. Rankin,* 59 Wash.2d 288, 367 P.2d 835, 841 (1962) (finding no error in allowing minor plaintiff to show extent of mental ability to jury).

The trial court did not err in allowing the in-court demonstration of Alexander's injuries. The demonstration by Dr. Yetman was properly limited, and took approximately nine minutes in a trial that lasted twenty-eight days. Parkway never lodged a Rule

403 objection claiming that the prejudicial effect of the demonstration outweighed its probative value, nor has it claimed that the jury's verdict was excessive. Thus, Parkway has failed to show that the demonstration went beyond the limit of showing the nature and extent of the injury and became a mere method to inflame the minds of the jury. *Gray,* 368 S.W.2d at 864.

■ Parkway also claims the demonstration formed the basis for new opinions from Dr. Yetman which surprised and unduly prejudiced the hospital. Again, however, Parkway has failed to articulate what opinions voiced by Dr. Yetman were new, surprising or prejudicial. The trial court informed Parkway that it could lodge objections to any new opinions given by Dr. Yetman during the demonstration, but Parkway made no such objections. Dr. Yetman's testimony related to "damages associated with [Alexander's] condition" and was clearly within the plaintiffs' designation. The tenor of the hospital's complaint appears to be that the in-court demonstration improperly bolstered Dr. Yetman's testimony, however, Parkway failed to so object at trial and waived error on this basis. Nevertheless, a party is free to support the opinion testimony of an expert by proof of facts which tend to show its accuracy, unless the facts and circumstances relate to a special transaction outside the case on trial for the purpose of allowing the jury to compare the results of such transactions, with the object of impressing the jury with the soundness of the expert's opinion. *City of Hawkins v. E.B. Germany & Sons,* 425 S.W.2d 23, 28 (Tex. Civ.App.—Tyler 1968, writ ref'd n.r.e.). Parkway has wholly failed to demonstrate that the in-court evaluation improperly bolstered Dr. Yetman's opinion testimony.

■ Neither has Parkway shown that it was surprised or unduly prejudiced by the in-court demonstration. Dr. Yetman's testimony was merely cumulative of properly admitted testimony and evidence, including Lisa's testimony, testimony of other expert witnesses and documentary evidence. *See Luna v. So. Pac. Transp. Co.,* 724 S.W.2d 383, 385 (Tex.1987). In fact, the demonstration was substantially similar to Alexander's

"day-in-the-life video" reviewed by Dr. Yetman. The video was made approximately one year earlier, and showed the child's speech, gross motor and fine motor deficits. Finally, the record reflects that, two days after the in-court demonstration, Parkway cross-examined Lisa and introduced the preview tape into evidence. A party may not complain of the admission of improper evidence offered by the other side when it introduces the same evidence or evidence of a similar character. *McInnes v. Yamaha Motor Corp., U.S.A.,* 673 S.W.2d 185, 188 (Tex. 1984), *cert denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). Point of error two is overruled.

### Points of Error Three and Four

Parkway's third and fourth points of error contend the trial court erred in (1) permitting the Lees to rely on judicial admissions that were waived by their failure to object to controverting evidence, and (2) refusing to instruct the jury to disregard the conclusive effect of the judicial admissions.

At trial, the defendants hotly contested whether or not the injection of Pitocin was given on the orders of Lisa's obstetrician, Dr. Chin Lee. At the beginning of their case, the Lees read to the jury the following judicial admissions made by the hospital in its response to a series of requests for admissions:

1. Dr. Chin Lee did not verbally authorize Gloria Johnson, R.N. to administer Pitocin to Lisa Lee on June 24, 1992.

2. Gloria Johnson, R.N. did not receive orders from Dr. Chin Lee at approximately 5:30 a.m. on June 24, 1992 directing her to administer Pitocin to augment Ms. Lee's delivery.

3. Gloria Johnson, R.N. did not receive orders from Dr. Chin Lee at approximately 5:30 a.m. on June 24, 1992 directing her to administer Pitocin to induce Ms. Lee's delivery.

The Lees then presented Nurse Johnson's video deposition in which she testified Dr. Lee did not give her an order to administer Pitocin, but instructed that his routine orders should be followed. When the shift changed, she in turn told the other nurses, including Nurse Tarriman (who gave the injection), that Dr. Lee's routine orders were to be followed. Nurse Johnson testified she did not tell anyone that Dr. Lee had ordered Pitocin. Nurse Tarriman's video deposition was then played for the jury. She testified that Nurse Johnson told her Pitocin had been ordered by the doctor. Dr. Lee testified that he was sure he did not order Pitocin. During its case in chief, the hospital presented testimony from Nurses Johnson, Tarriman and Samuels (who had testified by video deposition that Nurse Tarriman was negligent in administering the Pitocin) that conflicted with their prior testimony and controverted the requests for admissions. The hospital presented such evidence without objection.

■ Parkway complains that the Lees "sought to enhance the effect of the admissions by eliciting controverting testimony from the hospital's nurses and then using the admission to impeach and embarrass" the witnesses. Despite Parkway's protestations, the rules clearly allow the use of admissions for just this purpose. Tex.R. Civ. Evid. 613; Tex.R. Civ. Evid. 803(2). Parkway cites Rule 169(2), which states that "[a]ny matter admitted under this rule is conclusively established as to the party making the admission unless the court on motion permits withdrawal or amendment of the admission." Tex.R. Civ. P. 169(2). Parkway does not claim the trial court erred in denying its motion to withdraw or amend its admissions, but claims the Lees waived their right to rely on the admissions because they allowed the introduction of controverting evidence.

■ It is true that an admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it. *Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989); *see also Shaw v. Nat'l County Mut. Fire Ins. Co.,* 723 S.W.2d 236, 238 (Tex.App.—Houston [1st Dist.] 1986, no writ). A party asserting the *conclusive* effect of an opponent's judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and the submission of any issue bearing on the facts admitted. *Marshall,* 767 S.W.2d at 700; *Houston First Am. Sav.*

*v. Musick,* 650 S.W.2d 764, 769 (Tex.1983). When the Lees allowed the admission of controverting evidence without objection, they waived their right to rely on the *conclusive* effect of Parkway's admissions. However, because the admissions were properly entered into evidence and not withdrawn or amended, they still constituted valid, probative evidence that could be appropriately considered by the jury in its deliberations. *See* TEX.R. CIV. P. 169(2). As explained by the supreme court:

> A party's testimonial declarations which are contrary to his position are quasi-admissions. They are merely some evidence, and they are not conclusive upon the admitter. [citations omitted] The weight to be given such admissions is decided by the trier of fact. These are to be distinguished from the true judicial admission which is a formal waiver of proof usually found in pleadings or the stipulations of the parties. A judicial admission is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it. [citations omitted].

*Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex.1980); *see also Hennigan v. I.P. Petroleum Co., Inc.,* 858 S.W.2d 371, 372 (Tex.1993). The fact that the hospital's admission was controverted did not prevent its use for impeachment or as substantive evidence on a material issue. *Mendoza,* 606 S.W.2d at 694. Point of error three is overruled.

In point of error four, Parkway claims the trial court erred by refusing to submit the following remedial instruction to the jury:

> You are instructed that you are to disregard the request for admissions regarding whether or not the nurses had an order from Dr. Lee, and you are not to consider the admissions for any purposes whatsoever.

To obtain a reversal based upon the court's failure to submit an instruction, a substantially correct instruction on the law must have been requested in writing and tendered by the complaining party. TEX.R. CIV. P. 278; *J.V. Harrison Truck Lines, Inc. v. Larson,* 663 S.W.2d 37, 41 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). For the reasons discussed in point of error three, Parkway's proposed instruction was not a substantially correct statement of the law. *Mendoza,* 606 S.W.2d at 694; *Hennigan,* 858 S.W.2d at 372. Such an instruction would have improperly allowed the hospital to, in effect, withdraw its admissions. *See* TEX.R. CIV. P. 169(2). We overrule Parkway's fourth point of error.

### Point of Error Five

In point of error five, Parkway claims the trial court erred in excluding the testimony of Lisa's ex-husband, Stephen Heiman. Parkway sought to call Lisa's former husband to testify regarding the medical history of their children, purportedly to support its theory that Alexander's problems were the result of congenital malformations in the womb or a genetic disorder. Specifically, Parkway sought to present evidence that Lisa's and Stephen's oldest child had suffered from grand mal seizures since the age of fifteen. The trial court did not allow Stephen to testify because he had not been timely designated by the defendants as a person with knowledge of relevant facts. Parkway contends the trial court abused its discretion because the hospital conclusively established good cause for its failure to designate the witness.

■ A party is obligated to designate any witness it expects to call and to disclose the substance of his testimony as soon as practical, but not less than thirty days before trial. TEX.R. CIV. P. 166b(6)(a); *Sharp v. Broadway National Bank,* 784 S.W.2d 669, 671 (Tex.1990). If a party fails to designate a witness pursuant to Rule 166b(6)(a), the witness may not testify "unless the trial court finds that good cause sufficient to require admission exists." TEX.R. CIV. P. 215(5). The party offering the testimony has the burden of showing good cause for its failure to supplement. *Sharp,* 784 S.W.2d at 671; *Gee,* 765 S.W.2d at 395; *Yeldell v. Holiday Hills Retirement & Nursing Ctr., Inc.,* 701 S.W.2d 243, 246 (Tex.1985). The trial court has the discretion to determine whether the offering party met its burden of showing good cause. *Alvarado v. Farah Mfg. Co.,*

*Inc.*, 830 S.W.2d 911, 914; *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986) (citing *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 442 (Tex.1984)).

In response to interrogatories, Lisa identified Stephen Heiman as her ex-husband and the father of her three older children. She listed his address and phone number as "unknown" because, according to her testimony, he frequently changed addresses. She explained that she did not amend her answers to provide this information when it became available because she forgot and the defendants never asked again. Lisa further testified that she did not identify Stephen as a person with knowledge of relevant facts because she did not think he knew anything relevant to the case. Parkway claims that Lisa's failure to provide such information established good cause for its failure to designate Stephen as a witness. We disagree.

■ As the party offering Stephen's testimony, Parkway bore the burden to establish good cause as to why he was not timely designated as a witness. A party who is aware of a witness' name must demonstrate on the record their unsuccessful efforts to locate the witness or show an inability to anticipate the use of the testimony. *See Clark v. Trailways, Inc.*, 774 S.W.2d 644, 647 (Tex.1989). Unless the party thus establishes "good cause," the trial court must automatically exclude the testimony of an untimely designated witness. TEX.R. CIV. P. 215(5). Lisa provided her ex-husband's name in her answers to interrogatories, but the record is devoid of evidence showing that Parkway attempted to locate him prior to trial. Parkway knew Lisa had three children by Stephen before she gave birth to Alexander, and had ample time to pursue this line of investigation. The mere claim that Parkway was unaware Stephen had knowledge of relevant facts until shortly before trial is not sufficient in itself to establish good cause. *See Macedonia Baptist Church v. Gibson*, 833 S.W.2d 557, 560 (Tex.App.—Texarkana 1992, writ denied).

■ Parkway further claims that the trial court's failure to allow the defendants to rebut or impeach Lisa with evidence of her oldest child's seizures "greatly discounted

Defendants' causation theory of congenital malformations in the womb and genetic disorders." However, without knowing the medical cause of the seizures, and without expert testimony linking the seizures to the defendants' causation theory, Stephen's testimony regarding his son's seizures was irrelevant and completely speculative. We find the trial court did not abuse its discretion in excluding Stephen's testimony and overrule Parkway's fifth point of error

### Point of Error Six

In its sixth point of error, Parkway claims the trial court erred in granting the Lees' post-verdict motion to amend their petition to increase the amount of damages claimed for Alexander's future medical, nursing, educational and custodial care (hereinafter collectively "future care"). Parkway complains that it was prejudiced by the amendment because it relied on the figure claimed for future medical expenses in their settlement negotiation and trial strategy decisions.

The Lees' sixth amended petition sought a total of $17.6 million in damages for Alexander, $10 million of which was for future care. The Lees' eighth amended petition, upon which they proceeded to trial, also sought a total of $17.6 million for Alexander, but only requested $7 million for future care. The jury awarded a total of $11.3 million in damages for Alexander, $10 million of which was for future care. While the jury allocated damages differently than pled for in the Lees' petition, its total damage award was supported by the evidence and was less than the total amount of damages pled by the Lees prior to trial. The Lees filed a motion for leave to supplement their petition to increase the amount claimed for Alexander's future care from $7 million to $10 million, which the trial court granted.

■ A trial court *must* allow a trial amendment that increases the amount of damages sought in the pleadings to that found by the jury unless the opposing party presents evidence of prejudice or surprise. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990). The trial court has no discretion to refuse such an amend-

ment unless evidence of surprise or prejudice is presented or the amendment asserts a new cause of action or defense and thus is prejudicial on its face. *Id.* (citing TEX.R. CIV. P. 63 and 66; *Hardin v. Hardin,* 597 S.W.2d 347, 350–351 (Tex.1980) (Campbell, J., concurring); *Food Source, Inc. v. Zurich Ins. Co.,* 751 S.W.2d 596, 599 (Tex.App.—Dallas 1988, writ denied)); *see also Chapin & Chapin, Inc. v. Texas Sand and Gravel Co., Inc.,* 844 S.W.2d 664, 665 (Tex.1992). The burden is upon the party opposing an amendment increasing damages to *"present evidence to show that the increase resulted in surprise." See Greenhalgh,* 787 S.W.2d at 940 (emphasis added).

■ Parkway's attorney argued to the trial court that it "relied heavily on the plaintiffs' pleadings" and "[to allow amendment] at this late date after trial, after the evidence is in, not only operates as a surprise but also as prejudicial." Parkway's counsel stated that he relied on the plaintiff's eighth amended petition and chose not to go forward with any evidence that he could have produced. However, the Lees' economist testified without objection that the projected cost of Alexander's future care was in excess of $10 million, and he was cross-examined on those projections by counsel for the hospital. Parkway presented no evidence to support its bare allegations of surprise and prejudice. Because the Lees' amendment raised no new substantive matters and changed only the allocation, and not the amount, of damages, and Parkway presented *no evidence* of surprise or prejudice, we overrule Parkway's sixth point of error.

### Point of Error Seven

In its seventh point of error, Parkway contends the trial court erred in entering judgment on the jury's award for "damage to the family relationship" because such an element of damages is not recognized in a personal injury action in Texas. Its argument,

however, is based upon cases that have failed to recognize a cause of action for "interference with family relationships." Parkway has obviously confused two very different avenues for recovery.

■ The definition given to the jury for "[d]amage to the family relationship" is, with a few minor additions, virtually identical to the Texas Supreme Court's definition of loss of consortium as "loss of love, advice, comfort, companionship and society." *Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex.1983). In *Sanchez,* the court held that "injuries to the familial relationship are significant injuries and are worthy of compensation." *Id.* at 252; *see also Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 551 (Tex. 1985). The Lees did not plead "interference with the family relationship," as disapproved in *Transportation Ins. Co. v. Archer,* 832 S.W.2d 403, 405 (Tex.App.—Fort Worth 1992, writ denied). Rather, the Lees pled for "damage to the family relationship" or loss of filial consortium, an element of damage clearly recognized in Texas.[2] *See Salinas v. Fort Worth Cab & Baggage Co., Inc.,* 725 S.W.2d 701, 703–04 (Tex.1987); *Sanchez,* 651 S.W.2d at 252 (Tex.1983); *see also Cavnar,* 696 S.W.2d at 551. In any event, Parkway did not object to the question and definition on the ground that "interference with family relationships" was not a viable theory of recovery in Texas, and thus did not properly preserve error. TEX.R. CIV. P. 274; *Castleberry v. Branscum,* 721 S.W.2d 270, 276–77 (Tex.1986). Accordingly, we overrule Parkway's seventh point of error.

### Point of Error Eight

In its eighth and final point of error, Parkway claims the guardian ad litem fee awarded by the court was in excess of a reasonable amount charged for like services in the community.

> "Damage to the family relationship: means the mutual right of a mother and son to the love, comfort, affection, emotional support, companionship, care and society which Lisa Lee would, in reasonable probability, have received from Alexander Lee had he not received the injuries he sustained."

**2.** Question 8(d) of the Jury Charge reads as follows:

  · If you find that Alexander Lee's injuries are severe, permanent and disabling, and only in that event, then answer question 8(d). Otherwise, do not answer Question 8(d).

    d. Damage to the family relationship ____

The award of guardian ad litem fees is in the sound discretion of the trial court, and absent evidence illustrating a clear abuse of discretion will not be set aside by a reviewing court. *Simon v. York Crane & Rigging Co., Inc.,* 739 S.W.2d 793, 794–95 (Tex.1987). In general, the same factors used to determine the reasonableness of attorney's fees are employed to ascertain the reasonableness of a guardian ad litem's fees. *Id.* Relevant factors are (1) the difficulty and complexity of the case, (2) the amount of time spent by the attorney, (3) the benefit derived by the client, and (4) the skill and experience reasonably needed to perform the service. *Id.*

Paul Waldner was appointed guardian ad litem for Alexander on June 6, 1994. Waldner testified that he recorded 244 hours of time, but was requesting fees for 300 hours because he did not start recording his time until January, 1995. Waldner and his staff spent extensive time on the case, which he described as raising "virtually every conceivable medical issue" and "the most complex" in which he had ever been involved. Waldner attended depositions and reviewed the discovery in the case, including the depositions and medical reports. He also attended the mediation and, after it failed, initiated further settlement negotiations. He suggested experts, worked with experts and assisted in trial strategy. The problems in the case were complicated by the change in Parkway's attorneys "very close to the trial date." Due to his responsibilities as guardian ad litem, Waldner had to defer important legal matters, causing his practice and clients to suffer. Additionally, his fiduciary obligation to Alexander put him in a position "of considerable personal legal liability." While Waldner did not attend the six-week trial, he did attend several hearings. Waldner requested a fee of $200,000 for his services, but the trial court reduced his award to $125,000.

An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Simon,* 739 S.W.2d at 795; *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex. 1970). The party contending abuse of discretion, however, has the burden to bring forth a record showing such abuse. *See Id; Englander Co. v. Kennedy,* 428 S.W.2d 806, 807 (Tex.1968); TEX.R.APP. P. 50(d). Absent such a record, the reviewing court must presume that the evidence before the trial judge was adequate to support the decision. *Simon,* 739 S.W.2d at 795; *Mays v. Pierce,* 281 S.W.2d 79, 82, 154 Tex. 487 (1955).

Other than cross-examining Waldner on customary attorney's fees in Houston, and pointing out that some of his work overlapped with work performed by the Lees' attorneys, Parkway failed to present any evidence that the guardian ad litem's award was arbitrary or unreasonable. While an award of $125,000 might be considered excessive in some situations, our review of the record does not show that the trial court's award amounted to an abuse of discretion in this case. Therefore, we overrule Parkway's eighth point of error.

The judgment of the trial court is affirmed.