**TRI–STATE WHOLESALE ASSOCIATED GROCERS, INC., Appellant,**

v.

**Robert BARRERA, Appellee.**

No. 08–94–00335–CV.

Court of Appeals of Texas, El Paso.

Feb. 15, 1996.

Rehearing Overruled March 13, 1996.

Michael D. McQueen, Kemp, Smith, Duncan & Hammond, El Paso, for Appellant.

Ben H. Langford, El Paso, Jeffrey T. Weikert, Studdard & Melby, P.C., El Paso, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

This case involves the rescue doctrine. Appellant, Tri–State Wholesale Associated Grocers, Inc. ("Tri–State") complains in its first two points of error that the evidence was legally and factually insufficient to establish that any *negligence on its part proximately caused the injuries* of Appellee, Robert Barrera. In its third point of error, Tri–State complains that the trial court erred in excluding a performance report of Barrera to be used for impeachment purposes. We affirm.

## SUMMARY OF THE EVIDENCE

On August 15, 1990, Louis Calderon ("Calderon"), a Tri–State employee, was operating a forklift to pull pallets of merchandise for pick up. He entered the freezer section of Warehouse B[1] through one door and proceeded up an aisle. As he approached the end of the aisle, he attempted to turn onto a perpendicular aisle. At this intersection, a sheet of ice had accumulated; Calderon lost control of the forklift and crashed into a rack of merchandise towering "a couple of stories high." Because the forks of the forklift obscured the forward vision, forklift operators typically drove in reverse when maneuvering down the aisles. As a result, Calderon was

---

1. Tri–State owns two warehouses which are distinguished in the record as Warehouse A and Warehouse B. The accident in question occurred in Warehouse B.

crushed between the weight of the forklift and the racks of merchandise. Unable to free himself and in severe pain, Calderon cried for help.

At the time, Barrera, a janitor for Tri-State, was sweeping up in the freezer section. He heard Calderon's cries for help, ran to the scene, and saw Calderon pinned in agony. When Calderon begged Barrera to help him, Barrera attempted to free Calderon by removing the boxes of merchandise from beneath him. Calderon then wormed out through the space Barrera created.

Recognizing the proximity of the wrecked forklift to the freezer door, Calderon told Barrera to move it. Because ice often formed around the door and because the vision of employees entering the freezer was blocked by a frost-covered plastic curtain hanging in front of the door, Calderon believed that another forklift entering the warehouse might be in danger if the forklift were not moved immediately. Barrera shared Calderon's fear and made his way into the forklift through the opening he had cleared for Calderon. Once in position, Barrera somehow activated the forklift.[2] Instead of the forklift moving away from the rack, it lurched backwards pinning Barrera even farther into the rack than Calderon had been. Although he was able to hit the battery disconnect switch, Barrera was hopelessly trapped and in a great deal of pain.

Calderon, still in extreme pain himself, was unable to help Barrera. He exited through the nearby freezer door and called for assistance. When help arrived, he sat down on a stack of nearby pallets to await attention. Other employees in the warehouse removed the merchandise around Barrera and disassembled the rack to free him. Ultimately, both Barrera and Calderon were taken to Sierra Medical Center. As a result of the accident, Barrera suffered a herniated disc in his back, and suffers from continuous pain and numbness in his right leg. His ability to work has also been impaired.

### STANDARD OF REVIEW

 In considering a "no evidence," legal insufficiency point, we consider only the evidence that tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402 (Tex.App.—El Paso 1994, writ denied). If more than a scintilla of evidence exists to support the questioned finding, the "no evidence" point fails. *Tseo v. Midland Am. Bank,* 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand,* 885 S.W.2d 471 (Tex.App.—El Paso 1994, writ denied).

 A factual sufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Tseo,* 893 S.W.2d at 25–26; *Hallmark,* 885 S.W.2d at 474. The reviewing court cannot substitute its conclusions for those of the jury. If sufficient competent evidence of probative force exists to support the finding, it must be sustained. *Tseo,* 893 S.W.2d at 26; *Apodaca,* 876 S.W.2d at 412. We may not interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Southwest Airlines Co. v. Jaeger,* 867 S.W.2d 824, 829–30 (Tex.App.—El Paso 1993, writ denied). Where conflicting evidence is present, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck,* 204 S.W.2d 508, 511–12 (Tex.1947); *Tseo,* 893 S.W.2d at 26; *Hallmark,* 885 S.W.2d at 474.

### SUFFICIENCY OF THE EVIDENCE

Tri-State complains in its first two points of error that the trial court erred in submitting Question No. 1 [3] to the jury, in entering

---

**2.** The testimony is conflicting whether Barrera moved a lever that made the forklift move forwards and backwards or whether he merely hit a switch powering up the forklift. The record establishes, however, that Barrera was certified as a forklift operator.

**3.** Question No. 1 submitted to the jury inquired: "Was the negligence, if any, of TRI STATE

judgment for Barrera over Tri–State's motion for judgment notwithstanding the verdict, and in denying Tri–State's motion for new trial because there was legally or factually insufficient evidence that any negligence of Tri–State was the proximate cause of Barrera's injuries.

### Negligence

Tri–State alleges that a finding of negligence can only be predicated upon three possible theories. It concedes negligence could be established if (1) it knew or should have known of the ice accumulation at the accident site; (2) it negligently maintained the forklift used by Calderon; or (3) Calderon acted negligently in operating the forklift. Because Barrera does not challenge the maintenance of the forklift and because no evidence is presented anywhere in the record that the forklift was negligently maintained, we must necessarily address only the first and third predicates.

■ The issue of ice accumulation involves a premises liability theory. An employer owes its employees a duty to maintain a safe working environment. *See Chemical Express Carriers, Inc.,* 819 S.W.2d 585, 589 (Tex.App.—El Paso 1991, writ denied) ("An employee must be furnished a safe place to work and must be furnished suitable tools to do the work safely."). This duty encompasses a requirement that the employer inspect the premises for dangerous conditions. *Id.; Zaborowske v. OES, Inc.,* 731 S.W.2d 614, 616–17 (Tex.App.—Houston [1st Dist.] 1987, no writ); *H.E.B. Food Stores v. Slaughter,* 484 S.W.2d 794, 796 (Tex.Civ.App.—Corpus Christi 1972, writ dism'd). In a premises liability case, an employer is liable only if the plaintiff shows (1) that the defendant had actual or constructive knowledge of some condition on the premises, (2) that the condition posed an unreasonable risk of harm, (3) that the defendant did not exercise reasonable care to reduce or eliminate the risk, and (4) that the defendant's failure to use such care proximately caused the plaintiff's inju-

WHOLESALE ASSOCIATED GROCERS, INC., a proximate cause of the injuries, if any, sustained by Robert Barrera on August 15, 1990?" The jury answered in the affirmative.

ries.[4] *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992); *Wyatt v. Furr's Supermarkets, Inc.,* 908 S.W.2d 266 (Tex.App.—El Paso 1995, writ requested); *cf. H.E. Butt Grocery Co. v. Newell,* 664 S.W.2d 116, 118 (Tex.Civ.App.—Corpus Christi 1983, no writ) ("A landowner or occupier has a basic duty to his business invitees to exercise ordinary care to keep his premises in a reasonably safe condition.").

■ Ample evidence exists to show that Tri–State knew or should have known of the ice buildup at the accident scene. Tri–State admits that it knew ice frequently formed around the door to the freezer creating a slick condition when entering or exiting the freezer, but it claims that the accident was some twenty feet away from the freezer door and that it was not on notice of ice in that particular area. Although ignorance of ice buildup in that specific area may indeed exempt Tri–State of liability, *see Keetch,* 845 S.W.2d at 268–70 (Mauzy, J., dissenting) (criticizing the Court's establishment of an ignorance rule), the evidence demonstrates that Tri–State was indeed on notice. Calderon testified as follows:

Q. Would you describe the ice that was on the ground there on the concrete where the forklift slid out?

A. I guess like a sheet of ice, you know, due to the cold, due to the, you know, probably the door opening, humidity, you know, from the other part of the warehouse going in. Just like a sheet just builds up from time to time.

Q. Was that cleaned on a regular basis at Tri–State when you worked there?

A. No, not necessarily, no. The supervisor, he would send anybody, no. It could be a janitor. It could be a forklift—ice is built up on the door. The supervisor wants someone to go clean it. So someone will go get it and scrape it up. But not on a regular basis, because sometimes you would be stuck there, and your wheels be spinning just trying to get out of the

4. Tri–State does not challenge the sufficiency of the evidence to establish the latter three prongs.

freezer, because you got merchandise—got merchandise on pallets, and they are trying to get out, you know—there's a little spinning for a while until it burns so much rubber, and then they get a little—or someone will go behind and help them, push them, to get out. But not on a regular basis, no, sir, it wasn't cleaned.

Barrera confirmed the existence of ice at the site of the accident:

Q. All right. What was the floor like right there where the accident occurred, where Louie Calderon had wrecked the forklift?

A. It was frozen. It was icy, and yet dirty, like muddy in a way.

Q. Like slush?

A. Like slush. And that's what made [Calderon] slide and wreck into the rack.

Tri–State contends that on cross-examination, Barrera referred to ice by the freezer door, not ice in the place of the accident:

Q. And is it your testimony that there was ice on the floor there in the warehouse?

A. Yes, there was.

Q. And where was the ice located in the warehouse?

A. By the freezer. There was always [ice] by the freezer doors.

Q. By the doors?

A. Both freezer doors.

Q. Both freezer doors. And Mr. Calderon had a little diagram and—but the ice was by the doors; is that right?

A. That's correct.

Q. Underneath where the curtain hangs down?

A. That's correct.

This testimony, at most, establishes the already conceded fact that ice formed frequently by the freezer doors. It does not refute the existence of ice at the accident scene. The only evidence refuting the existence of ice at the scene of the accident is the testimony of Carey Prather, the vice-president of safety and training at Tri–State, who stated without reservation that there was no ice at the scene. Significantly, Prather was called to the freezer within thirty minutes of the accident and arranged for an employee to take photographs of the scene; however, no pictures were taken of the floor and Prather admitted that he did not ask that any be taken. Without the photographs, the jury was presented with conflicting evidence. We are not positioned to resolve conflicts in the evidence. Obviously, the jury chose to believe Calderon and Barrera about the accumulation of ice inside the freezer, and we will not disturb that decision.

Because as a Tri–State employee, Calderon knew of the accumulation of ice, Tri–State was on notice of ice at the accident scene. *See Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539, 540 (Tex.1976). The evidence further shows that Tri–State infrequently removed the ice from the door and that the dangerous condition was allowed to persist for long, uninterrupted periods of time. There is thus legally and factually sufficient evidence to establish Tri–State's negligence as a result of the ice build up, and we need not address the alternative, respondeat superior theory of negligence.

### Proximate Cause

Tri–State claims that even if it were negligent in permitting the accumulation of ice, its negligence did not cause Barrera's injuries inasmuch as the chain of events had come to a rest once Barrera rescued Calderon. Simply stated, Tri–State urges that Barrera became an unforeseeable, independent, and intervening cause when he took it upon himself to move the forklift. Ancillary to this main assertion are two alleged facts: Barrera was not required to move the forklift as part of his job description, and the forklift was not in harm's way. Because Barrera cut off the chain of events, Tri–State asserts that it cannot be held responsible for any injuries he may have suffered. The facts concerning this assertion appear to be uncontested and the only remaining consideration is the proper application of the rescue doctrine.

■ To hold an actor liable for its negligent actions, a plaintiff must show that the

harm was foreseeable.[5] *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 313–14 (Tex.1987) ("Foreseeability, the second element of proximate cause, means the actor as a person of ordinary intelligence should have anticipated the dangers his negligent act creates for others."). Our jurisprudence is well-settled that the acts of rescuers are generally the foreseeable results of negligent activity. *See Longacre v. Reddick*, 215 S.W.2d 404, 406 (Tex.Civ.App.—Fort Worth 1948, mand. overr.). However, the injuries suffered by the rescuer must have been a foreseeable result of the negligent act. *See Snellenberger v. Rodriguez*, 760 S.W.2d 237, 237–38 (Tex. 1988); *Hennessy v. Estate of Perez*, 725 S.W.2d 507, 509 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Longacre*, 215 S.W.2d at 406. Furthermore, rescuers are not held to the same standard of reasonableness in an emergency situation as they would be if no emergency were present. *See Keystone–Fleming Transport, Inc. v. Tahoka*, 315 S.W.2d 656, 662–63 (Tex.Civ.App.—Amarillo 1958, writ ref'd n.r.e.); *Swift & Co. v. Baldwin*, 299 S.W.2d 157, 160 (Tex.Civ.App.—Texarkana 1957, no writ).

The facts before us clearly show that both Barrera and Calderon anticipated further, potential injuries arising from the forklift's proximity to the freezer door and its precarious position in the aisle with its forks aimed outward, compounded by the fact that the frost-covered curtain blocked it from view. Although hindsight may indicate that going immediately for help may have been a wiser choice than moving the forklift, a jury could have found that the actions of Barrera were reasonable under the circumstances. Therefore, we hold that in light of Calderon's request that Barrera move the forklift and the hectic, excited atmosphere created by the situation, Barrera's choice to move the forklift was part of the same transaction that began with the forklift slipping on the ice. His choice was not an unforeseeable, intervening cause. Tri–State cites *Bell v. Campbell*, 434 S.W.2d 117 (Tex.1968) (holding that a driver who caused an accident could not be responsible for the acts of a drunk driver who ignored warnings of the accident and killed several people clearing the accident), and *Wolf v. Friedman Steel Sales, Inc.*, 717 S.W.2d 669 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.) (holding that a trucking company could not be held responsible for securing chains on a parked truck because the acts of a thief were unforeseeable), to support its intervening cause claim. However, these cases are inapposite when applied to the rescue doctrine. *Cf. Hennessy*, 725 S.W.2d at 510 (refusing to apply *Bell* to a case involving similar facts but in which rescue was involved). So long as the acts of the rescuer are reasonable under the circumstances, the choices made with respect to the rescue will not be questioned.[6] Furthermore, the question of reasonableness is one peculiarly tailored to the province of the jury. In this case, the evidence is sufficient to support a jury finding that Barrera's acts were reasonable under the circumstances. Points of Error Nos. One and Two are overruled.

## EXCLUSION OF EVIDENCE

In its third point of error, Tri–State complains that the trial court erred in excluding a key piece of impeachment evidence intended to refute Barrera's claim that his work proficiency was significantly reduced as a result of his injury. Barrera testified that when he first began his employment with Tri–State, he worked at Warehouse A as an order selector.[7] As an order selector, he was given a list of items to collect for a pallet and a certain amount of time in which to pull the

---

5. Tri–State concedes the first element of proximate cause: cause in fact. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). If Calderon had not crashed the forklift, Barrera would not have been injured.

6. Although Carey Prather testified that the position of the forklift did not present a dangerous condition requiring its removal, he would not go so far as to state that Calderon was careless in telling Barrera to move it because "I wasn't there" to know what was going through Calderon's mind.

7. When the janitorial position opened at Warehouse B, Barrera applied because he preferred the cooler working conditions of the freezer. Following his injury, he again worked as an order selector, this time at Warehouse B.

merchandise.[8] Barrera claimed that prior to his injury, he was able to complete the pulls within the time constraints, but that afterward he could not. He further testified that he received warnings about low productivity, and that his production rate dropped from 85 to 35. He described an "observation" as "[w]hen a supervisor goes along with you during the pull, seeing how good you are doing, how fast you are doing it, and how well you are doing it." At that point, he was asked if Exhibit 10 referenced an observation of a pull that he did. The exhibit reflects the date of the observation as April 1, 1991, after the injury. It also reflects an 80 percent productivity rating, exceeding the 75 percent goal. Barrera's counsel then requested a bench conference concerning the exhibit.[9]

Prior to trial, Barrera had requested the production of certain documents, including "[t]he personnel file of [Barrera] and all other documents in [Tri–State's] possession concerning [him]." Tri–State objected as follows:

OBJECTION: Defendant objects to the '... all other documents ...' portion of the request to the extent it is overbroad and seeks the production of documents privileged from discovery by virtue of attorney/client privilege, work product doctrine, investigative privilege and/or party communication privilege. Subject to said objection, please see attached documents.

The stack of documents that were produced purported to be Barrera's entire personnel file.

 Tri–State's objection to discovery was based on *Loftin v. Martin,* 776 S.W.2d 145 (Tex.1989), in which the Supreme Court held that a request for "all notes, records, memoranda, documents and communications made that the carrier contends support its allegations" was vague, ambiguous, and overbroad. *Id.* at 148. Tri–State argues that Barrera had the burden to obtain a hearing with regard to the documents withheld. TEX. R.CIV.P. 167(3). However, Tri–State's objection extended only to the "all other docu-

---

8. Barrera testified that Tri–State had employed an industrial engineering firm to monitor the warehouse and determine how long it should take to make certain pulls, and that an employee was required to perform within 75 percent of that goal. For example, if the pull generally required one hour, Tri–State would permit 15 extra minutes.

9. The record reveals the following colloquy:
 Q. And I'm handing you Defendant's Exhibit 10. Is that an observation of a pull that you did?
 MR. LANGFORD: May I approach, Your Honor?
 THE COURT: You may.
 (Discussion at the bench.)
 MR. LANGFORD: I have never seen this before. I have never seen this before. We sent out request for productions for all of the personnel file for any violations. I have never seen this before.
 MR. McQUEEN: This is not an evaluation or a personnel—it wasn't in has personnel file, Your Honor. This is an observation report that they had out in the warehouse.
 MR. LANGFORD: Request for productions, any documents relating to—
 THE COURT: [The jury was excused.]

 . . . . .

 THE COURT: What does the request state?

 MR. LANGFORD: That's what I am looking for. I thought I had it.... It says the personnel file of Robert Barrera and all other documents in the defendant's possession concerning plaintiff.
 MR. McQUEEN: And we objected to that, Your Honor, that 'all other documents' portion is overbroad and seeks production of documents privileged, da-da-da-da-da. And subject to the objection, we did provide certain documents.
 MR. LANGFORD: Well, any and all handbooks, guidelines, and any—or any documents which reflect policies, practices and/or disciplinary procedures of the defendant.
 MR. McQUEEN: Which we also objected to. And we provided handbooks and manuals.
 THE COURT: Let me see what you have got.

 . . . . .

 MR. McQUEEN: Oh, okay. I myself didn't get this until Friday. And I didn't realize that his performance as an order selector was going to be put in issue.
 THE COURT: Well—
 MR. McQUEEN: But I do have it.
 THE COURT: Well, I'm going to sustain the objection. There you go. Take it back.

ments" language; it had clearly attempted to comply with the "personnel file" part of the request. Furthermore, the language of the objection would lead Barrera to believe that it had received the entire personnel file and that all that was excluded was privileged information.[10] Therefore, he did not request a hearing to produce documents that he thought he already had. The rule specifically provides that a party must "set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity." TEX.R.CIV.P. 167(1)(c). We hold that the category "personnel file" is reasonably specific. Furthermore, a performance report, like the one involved in this case, is an item that one would reasonably expect to find in a personnel file. Thus, Tri–State had a duty to supplement the discovery when it obtained the document in question, and the court correctly excluded it. *See Alvarado v. Farah Mfg. Company, Inc.,* 830 S.W.2d 911, 914 (Tex. 1992) ("The rule is mandatory, and its sole sanction—exclusion of evidence—is automatic ..."); *McElroy v. Fitts,* 876 S.W.2d 190, 194 (Tex.App.—El Paso 1994, writ dism'd by agr.) (finding that "failure to supplement requires the exclusion of the evidence which the party was under a duty to provide"). Tri–State's Point of Error No. Three is overruled.

## CONCLUSION

Having overruled all three points of error, we affirm the judgment.

---

**10.** Although personnel files may contain privileged information, *see e.g., Humphreys v. Caldwell,* 888 S.W.2d 469, 470–71 (Tex.1994) (refusing to overturn discovery order requiring production of personnel files where defective affidavit failed to substantiate the objection that the files contained confidential information), Tri–State did not specifically object to the request for Barrera's personnel file.