Arlene **MAGEE,** Individually and as Next Friend of Mary Ellen Magee and Marsha Danielle Magee, Minors, and as Personal Representative of the Estate of Dan Magee, Deceased, and Ruth Sorrell, Appellants,

v.

Jeffrey Richard **ULERY** and Matthew McGuire Ulery, as Independent Co–Executors of the Estate of Jacques Goldberg, M.D., Appellees.

No. 14–96–00951–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 29, 1999.

Thomas K. Brown, Houston, for appellants.

John R. Shepperd, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN and WITTIG.

## MAJORITY OPINION

MAURICE E. AMIDEI, Justice.

Appellants are the surviving spouse, children, and mother of Dan Magee, deceased. They sued the estate of Dr. Jacques Goldberg, deceased, for medical malpractice arising out of the emergency treatment of Dan Magee (Magee) by Dr. Goldberg in the Doctors Hospital–East Loop. Appellants alleged that Dr. Goldberg failed to properly diagnose Magee's heart condition that caused his death six days after he was discharged from the hospital. The jury found no negligence on the part of Dr. Goldberg, and the trial court entered a take nothing judgment against appellants. In three points of error, appellants contend: (1) the jury's failure to find negligence by Dr. Goldberg is against the great weight and preponderance of the evidence; (2) the trial court erred in overruling appellants' objections to testimony concerning the negligence of Dr. Rafael Conte because he was not identified in appellee's interrogatory answers as another person that caused or contributed to Magee's injury; and (3) the trial court erred in refusing to take judicial notice of Dr. Conte's age and status as a general practitioner. We affirm.

## I. BACKGROUND.

Dan Magee was a tug boat pilot working on the Houston Ship Channel when he experienced severe chest pain on July 24, 1991. After being stabilized by emergency medical personnel, he was taken by ambulance to the Doctor's Hospital. He was treated at the hospital by Dr. Goldberg who gave Magee an EKG (electrocardio-

gram) and cardiac enzyme blood tests to evaluate his condition and rule out a heart attack. Magee was kept in the intensive cardiac unit overnight, and was discharged from the hospital the following morning at his request. Dr. Goldberg's admitting diagnosis was "R/O Angina, R/O Chest Pain," and his discharge diagnosis was "heat stroke." Dr. Goldberg's medical reports indicated that Magee's EKG and cardiac enzymes were normal, ruling out a heart attack, and that he was discharged in satisfactory condition.

On July 25, 1991, the date he was discharged from the Houston hospital, Magee returned to his home in Louisiana to see his personal physician, Dr. Marcus Pittman. Because Magee also had diabetes, Dr. Pittman initially told Magee that his attack was probably due to his blood sugar. On July 30, 1991, Magee had more chest pains, and Dr. Pittman sent him to a local hospital for an EKG. After the test, Magee went home where he suffered a heart attack and died at 9:00 p.m., July 30, 1991. The death certificate shows Magee's immediate cause of death as "acute myocardial infarct" [heart attack], and "coronary atherosclerosis" [hardening of the arteries] and "diabetes mellitus" as conditions "leading to immediate cause." The death certificate indicated that Magee had coronary atherosclerosis "years" before his death, and had diabetes "12 years" before his death.

Dr. Goldberg died in a plane crash in 1992, and this suit was brought against his estate. Dr. Rafael Conte, who also treated Magee in the hospital, died in 1994, and his estate was not a party to this suit.

## II. STANDARD OF REVIEW.

In point of error one, appellants contend the jury's failure to find negligence on the part of Dr. Goldberg was against the great weight and preponderance of the evidence at the trial. Appellants challenge only the factual sufficiency of the evidence to support the jury's failure to find in their favor, not the legal sufficiency of the evidence.

Only one standard of review is used in reviewing factual sufficiency challenges, regardless of whether the court of appeals is reviewing a negative or affirmative jury finding or whether the complaining party had the burden of proof on the issue. *Merckling v. Curtis,* 911 S.W.2d 759, 763 (Tex.App.-Houston[1st Dist.] 1995, writ denied). In reviewing a factual sufficiency complaint, we must first examine all of the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Merckling,* 911 S.W.2d at 763. Having considered and weighed all of the evidence, we should set aside the verdict only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Merckling,* 911 S.W.2d at 763. We cannot merely substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Merckling,* 911 S.W.2d at 763.

## III. THEORIES OF NEGLIGENCE.

Appellants' theories at trial were that Dr. Goldberg was negligent: (1) in failing to perform the necessary tests to confirm the presence of active, life-threatening coronary artery disease; (2) in failing to call in a cardiologist to participate in the care; (3) in reaching a final diagnosis of heat stroke; and (4) in discharging a patient who had active coronary artery disease with a final diagnosis of heat stroke. The evidence of Dr. Goldberg's negligence in the treatment of Magee came primarily from the testimony of Dr. Samuel George, appellants' expert witness. The evidence of correct treatment of Magee, under the circumstances, came from appellees' expert witness, Dr. Mark Lambert. Both experts were cardiologists. Because both Dr. Goldberg and Dr. Conte were dead at the time of trial, both experts based their respective opinions primarily on Magee's medical records from the Doctor's Hospital for July 24 and 25, 1991. The only treat-

ing physician to testify was Dr. Marcus Pittman, who testified by deposition.

## A. THE EVIDENCE.

Both experts agreed on several facts which appellants claim show Dr. Goldberg was negligent. First, the record shows both experts testified that Magee had unstable angina when he was first admitted to the Doctor's Hospital on July 24. Second, Dr. Goldberg did not see Magee in the emergency room of the hospital, but saw him for the first time at 7:00 p.m., July 24. At that time, Dr. Goldberg gave Magee an examination, and wrote that they had to "rule out" "MI" [myocardial infarction], angina, and diabetes." Dr. George found this admitting diagnosis was "exactly right" as did Dr. Lambert. Third, Dr. Goldberg gave Magee an EKG and blood tests for cardiac enzymes. Both experts stated these tests did not indicate a heart attack, and this was the correct procedure to follow. Fourth, both experts agreed further tests should have been done for unstable angina. Fifth, Dr. George said that the standard of care required Dr. Goldberg to call a cardiologist. Dr. Lambert said Dr. Goldberg should have gotten a cardiologist, but did not state that the failure to do so was below the medical standard of care. Sixth, both experts agreed there was nothing in the records to indicate that Dr. Goldberg wanted Magee to stay past Thursday, July 25, when Magee was discharged. Seventh, Dr. George said Dr. Goldberg's diagnosis of heat stroke was not justified by the record. Dr. Lambert did not know why Dr. Goldberg diagnosed Magee with heatstroke, and this diagnosis was erroneous. Eighth, Dr. George stated that Dr. Goldberg's failure to rule out coronary artery disease was below the standard of care.

Dr. George stated that Dr. Goldberg was negligent, and Dr. Lambert stated Dr. Goldberg was not negligent. Both experts stated that the records showed that Dr. Conte, not Dr. Goldberg, took Magee off telemetry [continuous EKG monitoring] and nitro paste [for angina pain]. Both experts acknowledged that Dr. Conte dictated the discharge report for Magee, and Dr. Goldberg signed it.

Both experts seemed to agree that Dr. Goldberg's admitting diagnosis of unstable angina was correct. Dr. George stated that Dr. Goldberg fell below the standard of care because he failed to go further by sending Magee to a cardiologist and give Magee further tests to determine the cause of his angina. However, neither expert had an explanation as to why Magee was discharged without further testing. There is a notation in the hospital records, under the caption "NURSING DOCUMENTATION," stating, in pertinent part:

> 10:30 Dr. Conte notified of pt wanting to be discharged so he can go to own family Dr. . . . .

Dr. Pittman testified that Magee came to see him on July 25, the same day he had been discharged from the Houston hospital. At this time, Magee told Dr. Pittman he was not in pain. Dr. Pittman stated: "He came to see me because he had left the hospital telling them that he would come see his own doctor. That's what my impression was." Dr. Pittman testified that he wanted to put Magee in the hospital and have him examined by a cardiologist, but Magee refused to go because "he was all right."

## B. FACTUAL SUFFICIENCY.

■ Both experts agreed that Dr. Goldberg's treatment and diagnosis when Magee was admitted to the hospital was correct. Dr. George feels that Dr. Goldberg was negligent because he did not conduct more tests to determine what caused the unstable angina. However, the record shows Magee requested to be discharged before any further tests were done. The record is silent as to what, if anything, Dr. Goldberg intended to do on July 25, 1991, when Magee voluntarily left the hospital to see Dr. Pittman. Dr. Pittman stated Magee was not in pain when he

saw him July 25, and that Magee refused to go to the hospital for further testing and insisted he was "all right." Magee was in the hospital less than twenty-four hours when he told Dr. Conte he wanted to be discharged. What Dr. Goldberg *could have done* had Magee decided to stay, or what he *might* have said to Magee when he learned that he wanted to go home, is not in the record. The record shows Magee was being treated; the treatment was stopped at 10:30 a.m., July 25, 1991, because he wanted to go home. The record is not clear as to whether Dr. Goldberg or Dr. Conte made the discharge diagnosis of "heat stroke." Because both Dr. Goldberg and Dr. Conte were dead at the time of the trial, the reason for this diagnosis is unknown. Dr. Lambert testified that the diagnosis was "erroneous" but he also testified that Dr. Goldberg was not negligent. The jury could have believed Dr. Lambert instead of Dr. George.

Because the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, we may not substitute our judgment for that of the jury's simply because we may disagree with the jury's findings. *Herbert v. Herbert,* 754 S.W.2d 141, 142 (Tex.1988); *Bradley v. Rogers,* 879 S.W.2d 947, 953 (Tex.App.-Houston[14th Dist.] 1994, writ denied). In weighing the testimony of Dr. George supporting negligence against the testimony of Dr. Lambert refuting negligence, together with the testimony of Dr. Pittman, and the medical records in evidence, we find that the jury's finding of no negligence on the part of Dr. Goldberg was not against the great weight and preponderance of the evidence. *See also Winkle v. Tullos,* 917 S.W.2d 304, 317–18 (Tex.App.-Houston[14th Dist.] 1995, writ denied) (conflicting expert testimony on use of tourniquet during knee surgery; jury's failure to find negligence supported by legally and factually sufficient evidence); *Merckling,* 911 S.W.2d at 763–67 (detailed evidence in opinion was legally and factually sufficient to support finding of no negligence ·on part of general sur-

geon in diagnosing need for hernia surgery); *Crawford v. Hope,* 898 S.W.2d 937, 942–43 (Tex.App.-Amarillo 1995, writ denied) ("battle of experts" in suit against physician for terminating patient's seizure medications and replacing them with ineffective medication; weight of evidence was for jury, and finding of no proximate cause for treating physician was not manifestly unjust or clearly wrong). We overrule appellants' point of error one.

## IV. NEGLIGENCE OF DR. CONTE.

In point two, appellants contend that the trial court erred in overruling their objections to testimony of their expert witness on cross-examination concerning Dr. Conte's negligence because appellees did not identify Dr. Conte in their answer to appellants' interrogatories. Appellants argue that appellees introduced evidence of Dr. Conte's negligence in violation of rule 215.5, Texas Rules of Civil Procedure, and that this was a surprise to appellants at the time of trial.

Appellants initially introduced evidence of Dr. Conte's treatment of Magee through the testimony of their own expert, Dr. George. Appellants' counsel asked Dr. George if Dr. Conte was brought in to help Dr. Goldberg. Dr. George answered: "Yes, it appeared to me that Dr. Conte was helping Dr. Goldberg adjust the patient's diet and insulin so that his blood sugar would normalize." Appellants introduced into evidence the hospital records that made numerous references to Dr.· Conte's participation and had his notes as to what he did for Magee. On cross-examination by appellees, Dr. George testified that Dr. Conte had signed some phone orders and progress notes for Magee. Appellees then asked Dr. George if he would criticize Dr. Goldberg if it was shown that Dr. Conte discharged Magee. At this point, appellants objected that appellee failed to identify Dr. Conte in an answer to an interrogatory and any evidence of Dr. Conte's participation would

violate rule 215, Texas Rules of Civil Procedure (automatic exclusion of evidence by party who fails to respond to or supplement his response to a request for discovery). *See* Tex.R. Civ. P. 215.5. Appellants' interrogatory number seven asked:

> If you contend that the negligence of DAN MAGEE or any other persons caused or contributed to the injury or damages sustained by DAN MAGEE, please identify each such person, the allegedly negligent conduct of that person, and every fact, document and person with knowledge of every relevant facts [*sic*] which support your contention in whole or in part.

Appellees objected on the grounds of attorney work-product, attorney-client and investigation privileges. Appellees also stated: "Subject to this objection and without waiving same, discovery is ongoing and no determination has been made with respect to other culpable parties."

■ After appellants objected to appellees' cross-examination and questions concerning Dr.Conte, the trial court overruled the objection. Thereafter, both appellants and appellees asked many questions about Dr. Conte's participation. A party may not complain of the admission of improper evidence offered by the other side when it introduces the same evidence or evidence of a similar character. *McInnes v. Yamaha Motor Corp., U.S.A.,* 673 S.W.2d 185, 188 (Tex.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *Parkway Hosp., Inc. v. Lee,* 946 S.W.2d 580, 587 (Tex.App.-Houston[14th Dist.] 1997, writ denied) (hospital complained on appeal that video showing plaintiff's injuries was unduly prejudicial because the hospital had no prior notice, and then later introduced the same video into evidence; court of appeals found no error).

Assuming *arguendo* appellants' objection to appellees' cross-examination of Dr. George concerning Dr. Conte's role in Magee's treatment was valid, the trial court erred because references to Dr. Conte's treatment should not have been admitted.

The failure of a party to supplement answers to interrogatories results in the automatic exclusion of evidence which the party was under a duty to provide in a response or supplemental response. Tex.R. Civ. P. 215.5. The evidence is admissible if the trial court finds that good cause exists for requiring admission. *Id.* The burden of establishing good cause is on the party offering the evidence. *Id. See Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 395 (Tex.1989). However, when a trial court errs by allowing the undisclosed evidence without a showing of good cause, as was the case here, we must determine whether the trial court's action constituted reversible error as expressed in Tex.R.App. P. 44.1. *Id.* at 396.

■ To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) the error probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1(a)(1). The reversible error standard in former rule 81(b), Texas Rules of Appellate Procedure, was changed to omit "reasonably calculated to cause" an improper judgment but no substantive change was intended. Tex.R.App. P. 44 cmt. (Vernons 1998). *Gee,* 765 S.W.2d at 396. The supreme court in *Gee* held that "this court will ordinarily not find reversible error for erroneous rulings on admissibility of evidence where the evidence in question is cumulative and not controlling on a material issue dispositive of the case." *Id.* "The erroneous admission of testimony that is merely cumulative of properly admitted testimony is harmless error." *Id.* (citing *McInnes v. Yamaha Motor Corp.,* 673 S.W.2d at 188). In this case, appellees on cross-examination asked Dr. George what the hospital records showed with respect to treatment rendered by Dr. Conte. Appellees cross-examination consisted of using *only* these records and pointing out numerous instances where Dr. Conte, not

Dr. Goldberg, attended Magee. Dr. George agreed that Dr. Conte made numerous reports of treatment, but stated that Dr. Goldberg was the doctor in charge of the patient. Nothing new was introduced into evidence that appellants did not already have in their possession. Accordingly, we find that the cross-examination of Dr. George about Dr. Conte's participation in Magee's treatment was cumulative of the written hospital records placed into evidence by appellants. Therefore, assuming *arguendo* the trial court erred by allowing the cross-examination of Dr. George about Dr. Conte, such erroneous admission of the evidence was merely cumulative of properly admitted testimony and was harmless error. *Gee,* 765 S.W.2d at 396; *Parkway Hosp.,* 946 S.W.2d at 586. We overrule appellants' point of error two.

## V. JUDICIAL NOTICE OF DR. CONTE'S AGE AND STATUS.

 In point three, appellants contend the trial court erred in refusing to take judicial notice of Dr. Conte's status as a general practitioner and of his age at the time of the treatment in question. Out of the presence of the jury, appellants' witness, JoAnne Serafin, testified that she called the Texas Board of Medical Examiners and inquired as to the licensing for Dr. Conte. She was told he was a general practitioner out of Trinity, Texas, his birth date was October 3, 1907, and he died October 24th, 1994. Appellants asked the trial court to take judicial notice of Dr. Conte's age and status as a general practitioner, and instruct the jury of these facts. The trial court refused to take judicial notice of these facts, and told appellants' counsel he could argue that Dr. Conte was the physician in charge instead of Dr. Goldberg, but that he could not argue that he might have been a cardiologist. Appellant's counsel replied to the trial court's ruling: "[T]hat's okay. Thank you, Your Honor."

Appellants argue that under rule 201(d), Texas Rules of Evidence, the taking of judicial notice was mandatory upon appellants' request and supplying "the necessary information." Appellant cites no authority, other than the rule itself, to support his argument.

Rule 201(b) provides, in pertinent part: **(b) Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

\* \* \* \* \* \* \* \* \* \* \*

**(d) When Mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

Tex.R. Evid. 201(b) & (d).

Appellees argue that there was no proof that the "Dr. Conte" mentioned in the hospital records was the same person identified by appellees as "Rafael J. Conte" in their answers to appellants' interrogatories as having knowledge of the facts. Appellees further argue that there was no evidence that Dr. Conte's age and status as a general practitioner was a factor in any medical decisions by any physician in this case. Appellees argue that the error, if any, was therefore harmless.

In *Langdale v. Villamil,* 813 S.W.2d 187, 189–90 (Tex.App.-Houston[14th Dist.] 1991, no writ), this court held that an appellate court may take judicial notice of whether an attorney holds a license to practice law in this state, and appellate courts have even consulted the Texas Legal Directory to verify an attorney's practice within this jurisdiction. *Id.* In the present case, appellants furnished information to the trial court that the Texas Medical Examiners Board advised Ms. Serafin of Dr. Conte's birth date, place of practice, his status as a general practitioner, and his

date of death. Accordingly, we find the facts were capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned. TEX.R. EVID.201(b)(2). Because the trial court was furnished with the "necessary information," it was error not to notice these facts under rule 201(d). *See Office of Public Utility v. Public Utility Comm. of Texas,* 878 S.W.2d 598, 600 (Tex.1994) (court of appeals erred by refusing to take judicial notice of the published order of the Public Utility Commission).

The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–54 (Tex.1995). A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. *Id.* A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Id.* We determine whether the case turns on the evidence excluded by reviewing the entire record. *Id.* at 754.

In this case, the jury was presented with all the evidence concerning Dr. Conte's participation in the treatment of Magee. We fail to see how the fact that Dr. Conte was 84 and a general practitioner would have resulted in a different jury verdict. *City of Brownsville,* 897 S.W.2d at 754–55. Considering all the evidence, admitted and excluded, we conclude that the appellants did not demonstrate that the trial court's refusal to take judicial notice of Dr. Conte's age and status probably caused the rendition of an improper judgment. *See also Hill v. Heritage Resources, Inc.,* 964 S.W.2d 89, 137 (Tex.App.-El Paso 1997, pet. denied) (trial court erred in refusing to take judicial notice of published order of Railroad Commission, but error was harmless); *Drake v. Holstead,* 757 S.W.2d 909, 911 (Tex.App.-Beaumont 1988, no writ) (trial court erred in refusing to

take judicial notice of mathematical computations, but error harmless). We overrule appellants' point of error three and affirm the judgment of the trial court.

DON WITTIG, Justice, concurring.

I concur with the result reached by the majority. I only wish to point out more explicitly the assumed trial court error caused by the appellee's failure to supplement discovery.

Clearly the defense of this malpractice case involved the time worn strategy of pointing the finger away from the named defendant toward a non-party, here Dr. Conte (aka the empty chair defense). The majority duly notes appellee's failure to supplement the interrogatory inquiring whether the negligence of Magee or any other persons caused or contributed to the injury or damages. Appellee, after objecting, indicated discovery was ongoing and no determination had been made about other culpable parties. I would follow *Tri–State v. Barrera,* 917 S.W.2d 391 (Tex App–El Paso 1996) requiring supplementation even though an objection had been made. In *Tri–State,* the party objected to a discovery request under *Lofton* but nevertheless furnished part of the personnel records in question. The same party thereafter sought to introduce, over objection, additional undisclosed parts of the same personnel records. The *Tri–State* court upheld the trial courts exclusion of these additional unproduced records. Similarly, I would hold, that when a party indicates directly or indirectly, they have produced an item or will produce discovery, they have a duty to timely supplement, even when an objection has been lodged. Notwithstanding, as the majority noted, Dr. Conte's name and involvement in the treatment was all over the medical records proffered into evidence by appellant. Therefore, the mention of Dr. Conte by appellee was merely cumulative.